IN THE SUPREME COURT OF MISSISSIPPI

NO. 2006-CA-00427-SCT

*MAGNOLIA HEALTHCARE, INC. d/b/a ARNOLD
AVENUE NURSING HOME; FOUNDATION
HEALTH SERVICES, INC. AND DIANE
OLTREMARI, ADMINISTRATOR*

*v.*

*BARBARA JEAN BARNES, BY AND THROUGH
HER RELATIVE AND NEXT FRIEND, SHIRLEY
GRIGSBY, AS CONSERVATOR OF THE ESTATE
OF BARBARA JEAN BARNES*

<u>ON MOTION FOR REHEARING</u>

DATE OF JUDGMENT:               02/07/2006
TRIAL JUDGE:                    HON. RICHARD A. SMITH
COURT FROM WHICH APPEALED:      WASHINGTON COUNTY CIRCUIT COURT
ATTORNEYS FOR APPELLANTS:       PATRICIA J. KENNEDY
                                MICHAEL A. HEILMAN
                                CHRISTOPHER THOMAS GRAHAM
ATTORNEY FOR APPELLEES:         GEORGE F. HOLLOWELL, JR.
NATURE OF THE CASE:             CIVIL - CONTRACT
DISPOSITION:                    AFFIRMED - 08/07/2008
MOTION FOR REHEARING FILED:     02/19/2008
MANDATE ISSUED:

**EN BANC.**

**RANDOLPH, JUSTICE, FOR THE COURT:**

¶1.    The Motion for Rehearing filed on behalf of Barbara Jean Barnes by and through her

relative and next friend Shirley Grigsby, as conservator of her estate, is granted. The previous

opinions are withdrawn and these opinions substituted therefor.

**FACTS AND PROCEDURAL HISTORY**

¶2. The facts are undisputed that Barbara Jean Barnes ("Barnes") is an incompetent adult with the mental capacity of a three-year old and is incapable of residing alone. For years, Barnes was cared for by her grandmother, but her grandmother's age finally required someone else to assume this task. Barnes's grandmother convinced Barnes's cousin, Atwood Grigsby, to care for Barnes, and he became Barnes's primary caregiver. Barnes resided with Atwood and his wife until Atwood became ill. Atwood's wife, Shirley Grigbsy ("Grigsby"), was unable to care for both Atwood and Barnes and arranged for Barnes's admission into Magnolia Healthcare, Inc. d/b/a Arnold Avenue Nursing Home, and signed an admission agreement with an arbitration clause on February 19, 2003.

¶3. On September 12, 2005, Grigsby, acting as the next friend and conservator of the Estate of Barnes, filed suit in Washington County Circuit Court against Magnolia Healthcare, Inc., Arnold Avenue Nursing Home, Foundation Health Services, Inc., and Administrator Diane Oltremari (collectively referred to as "Magnolia"), alleging that on January 15, 2005, and June 17, 2005, Barnes was sexually assaulted while residing at Arnold Avenue Nursing Home. Magnolia filed a motion to compel arbitration, relying upon the admission agreement signed by Grigsby.

¶4. Following a hearing, the trial court denied Magnolia's motion to compel arbitration and held that, "Grigsby did not possess agency authority to bind Barnes nor did Grigsby possess any statutory authority to so bind." Magnolia now appeals to this Court, framing its appeal on a singular issue, *i.e.,* whether a surrogate has the authority under Mississippi Code Annotated 41-41-201, et. seq. (Rev. 2005), to execute a nursing home admissions agreement

2

which contains an arbitration provision. Grigsby counters that the circuit court did not err in denying the motion to compel arbitration, arguing that there was no valid agreement to arbitrate.

## STANDARD OF REVIEW

¶5.     This Court applies a de novo standard of review to denials of motions to compel. *Covenant Health Rehab of Picayune, L.P. v. Brown,* 949 So. 2d 732, 736 (Miss. 2007) (quoting *Vicksburg Partners, L.P. v. Stephens*, 911 So. 2d 507, 513 (Miss. 2005)).

## ANALYSIS

¶6.     In determining the validity of a motion to compel arbitration under the Federal Arbitration Act, courts generally conduct a two-pronged inquiry. "Under the first prong, the court should determine whether the parties have agreed to arbitrate the dispute." *Rogers-Dabbs Chevrolet-Hummer, Inc. v. Blakeney,* 950 So. 2d 170, 173 (Miss. 2007) (citing *East Ford, Inc. v. Taylor,* 826 So. 2d 709, 713 (Miss. 2002)). "The first prong has two considerations: (1) whether there is a valid arbitration agreement and (2) whether the parties' dispute is within the scope of the arbitration agreement." *Taylor*, 826 So. 2d at 713. Finding there is no valid arbitration agreement, our analysis will be short shrift.

¶7.     The arbitration provision in the February 19, 2003, admission agreement provides:

> It is understood and agreed by the Facility and Resident and/or Responsible Party that any legal dispute, controversy, demand or claim (hereinafter referred to as "claim" or "claims") that arises out of or relates to the Admission Agreement or any service or health care provided by the Facility to the Resident, shall be resolved exclusively by binding arbitration. . . in accordance with the American Health Lawyers Association Alternative Dispute Resolution Service Rules of Procedure for Arbitration, which are hereby incorporated into this agreement*. . . .

3

*Information regarding AHLA and/or its arbitration services and rules is available at: American Health Lawyers Association, 1025 Connecticut Avenue NW, Suite 600, Washington, D.C. 20036-56405, Phone: (202) 833-1100/ Fax: (202) 833-1105, www.healthlawyers.org or American Health Lawyers Association Alternative Dispute Resolution Service, 1666 Connecticut Avenue NW, Washington, DC 20009, Phone (202)-387-4176/Fax (202) 478-5155, e-mail: adr@healthlawyers.org.

¶8. American Health Lawyers Association Alternative Dispute Resolution Service Rule of Procedure 1.01 © 1991 (Rev. 2003) reveals the following:

Applicability of Rules:

The parties shall be bound by these Rules whenever they have agreed in writing to arbitration by the Service or under the Rules. The Service will administer a "consumer health care liability claim" under the Rules on or after January 1, 2004 *only if all of the parties have agreed in writing to arbitrate the claim after the injury has occurred and a copy of the agreement is received by the Service* at the time the parties make a request for a list of arbitrators. For purposes of the Rules, a "consumer health care liability claim" means a claim in which a current or former patient or a current or former patient's representative (including his or her estate or family) alleges that an injury was caused by the provision of (or the failure to provide) health care services or medical products by a health care provider or the manufacturer, distributor, supplier, or seller of a medical product.

(Emphasis added).

¶9. A review of the complaint reveals consumer health care liability claims dated after January 1, 2004. The complaint seeks remedy for injuries occurring first on January 15, 2005, and then on June 17, 2005.

¶10. It is undisputed that the parties did not agree to arbitrate the claim after the injury occurred, as required by the rules which were incorporated into the admissions agreement at the behest of Magnolia. "The U.S. Supreme Court has stated that, 'arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has

4

not agreed to submit.'" ***B.C. Rogers Poultry, Inc. v. Wedgeworth***, 911 So. 2d 483, 487-88 (Miss. 2005) (quoting ***AT&T Techs., Inc. v. Commc'ns. Workers of Am.***, 475 U.S. 643, 648, 106 S. Ct. 1415, 89 L. Ed. 2d 648 (1986)).

¶11.   Finding that no agreement to arbitrate was entered into after January 15, 2005, for this Court to review, the inescapable conclusion is that there was no valid agreement to arbitrate.

¶12.   "While the circuit court based its decision to deny arbitration on reasons different from ours, we may on appeal affirm the decision of the trial court where the right result is reached, even though we may disagree with the trial court's reasons for reaching that result." ***Pass Termite & Pest Control, Inc. v. Walker***, 904 So. 2d 1030, 1032 (Miss. 2004) (citation omitted). Accordingly, we affirm the trial court's denial of the motion to compel arbitration.

¶13.   **AFFIRMED.**

**SMITH, C.J., AND CARLSON, CONCUR.  DIAZ, P.J., AND LAMAR, J., CONCUR IN RESULT ONLY.  WALLER, P.J., CONCURS IN PART AND IN RESULT.  DICKINSON, J., CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY WALLER, P.J., AND LAMAR, J. GRAVES, J., CONCURS IN RESULT ONLY WITH SEPARATE WRITTEN OPINION JOINED BY DIAZ, P.J.  EASLEY, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.**

**DICKINSON, JUSTICE, CONCURRING:**

¶14.   I concur in affirming the trial count's judgment but for a different reason.  I conclude that Shirley Grigsby had no authority, as a surrogate or otherwise, to bind Barnes to an agreement to arbitrate.

¶15.   Relying on Mississippi Code Annotated Section 41-41-201 *et seq*, (Rev. 2005) as the legal basis for sending Barbara Barnes to arbitration, the defendant argues that Shirley Grigsby signed the agreement as Barnes's healthcare surrogate.  The defendant fails to

5

explain how one can serve as a statutory healthcare surrogate without fulfilling the statutory requirements. For one to serve as a statutory healthcare surrogate, the statute requires that a patient's "primary physician" determine whether the patient lacks capacity to make health-care decisions. This clear, unequivocal, statutory requirement is not met in this case. Thus, in my view, we should decide this case without reaching any agreement signed by Grigsby.

**WALLER, P.J., AND LAMAR, J., JOIN THIS OPINION**.

**GRAVES, JUSTICE, CONCURRING IN RESULT ONLY**:

¶16.    While I agree with the affirmance of the trial court's denial of the motion to compel arbitration, I reach that result for a different reason. The trial court denied Magnolia's motion to compel arbitration, finding that Grigsby did not possess the statutory or agency authority to bind Barnes to the arbitration provision within the admission agreement. I agree with the reasoning of the trial court, and therefore concur in affirming its decision.

¶17.    Assuming arguendo that Grigsby was acting on behalf of Barnes in her capacity as a health-care surrogate, as defined in the Uniform Health-Care Decisions Act, it is clear from a plain-meaning interpretation of the statute that a health-care surrogate is authorized to bind a patient to health-care decisions only while acting in that capacity. Mississippi Code Annotated Section 41-41-211(6) provides:

> (6) A surrogate shall make a *health-care decision* in accordance with the patient's individual instructions, if any, and other wishes to the extent known to the surrogate. Otherwise, the surrogate shall make the decision in accordance with the surrogate's determination of the patient's best interest. In determining the patient's best interest, the surrogate shall consider the patient's personal values to the extent known to the surrogate.
> . . .

6

Miss. Code Ann. § 41-41-211(6) (Rev. 2005) (emphasis added). The Legislature specifically defined "health-care decision" in Mississippi Code Annotated Section 41-41-203(h), which provides:

> (h) "Health-care decision" means a decision made by an individual or the individual's agent, guardian, or surrogate, regarding the individual's health care, including:
>
> (i) Selection and discharge of health-care providers and institutions;
> (ii) Approval or disapproval of diagnostic tests, surgical procedures, programs of medication, and orders not resuscitate; and
> (iii) Directions to provide, withhold or withdraw artificial nutrition and hydration and all other forms of health care.
>
> The phrase "health-care decision" does not include decisions made pursuant to Sections 41-39-31 through 41-39-51, the "Anatomical Gift Law."

Miss. Code Ann. § 41-41-203(h) (Rev. 2005).

¶18. When interpreting a statute, this Court must first determine whether the statute is ambiguous. *Harrison v. State*, 800 So. 2d 1134, 1137 (Miss. 2001). "When a statute is unambiguous, this Court applies the plain meaning of the statute and refrains from the use of statutory construction principals [sic]." *Gilmer v. State,* 955 So. 2d 829, 833 (Miss. 2007) (citing *Pinkton v. State*, 481 So.2d 306, 309 (Miss. 1995)). When the meaning of a statute is clear, this Court may not enlarge or restrict the statute. *Gilmer*, 955 So. 2d at 834 (citing *State v. Traylor,* 100 Miss. 544, 558-59, 56 So. 521 (1911).

¶19. Mississippi Code Annotated Sections 41-41-211 and 41-41-203(h) are unambiguous. The Legislature clearly and specifically defined "health-care decision," being careful to list specific instances which qualify as "health-care decision[s]" that a health-care surrogate is authorized to make on behalf of the patient. Nothing within the statute would indicate the

Legislature's intent to allow a health-care surrogate to enter into contracts which are not strictly related to health-care decisions. The decision to submit to arbitration is not a health-care decision. *See Mariner Healthcare, Inc. v. Green*, 2006 U.S. Dist. LEXIS 37479 (N.D. Miss. June 7, 2006) (surrogate's authority to make health-care decisions does not extend to arbitration); *Mariner Health Care, Inc v. Guthrie*, 2005 U.S. Dist. LEXIS 42651 (S.D. Miss. Aug. 24, 2005) (holding the same); *Covenant Health Rehab of Picayune, L.P. v. Estate of Lambert*, 984 So. 2d 283, *8-9 (Miss. Ct. App. 2006) (holding that Miss. Code Ann. § 41-41-203(h) and its definition of "health-care decision" do not confer upon health care surrogates the right to bind patients to arbitration); *see also Pagarigan v. Libby Care Ctr., Inc.*, 99 Cal. App. 4th 298, 120 Cal. Rptr. 2d 892 (Cal. Ct. App. 2002); *Blankfeld v. Richmond Health Care, Inc.,* 902 So. 2d 296, 301 (Fla. Dist. Ct. App. 2005). Furthermore, arbitration is not among those matters specifically delineated in the statute as a "health-care decision." Miss. Code Ann. § 41-41-203(h) (Rev. 2005). The Mississippi Court of Appeals has correctly cited, quoted, and applied Mississippi Code Annotated Sections 41-41-211 and 41-41-203(h) in concluding that the statute and its definition of "health-care decision" does not confer upon health-care surrogates the right to bind patients to arbitration agreements. *Covenant Health Rehab of Picayune, L.P. v. Estate of Lambert*, 984 So. 2d 283, *8-9. "The decision to arbitrate is neither explicitly authorized nor implied within section 41-41-203(h) which defines a health care decision . . . ." *Id*.

¶20.    Even in light of the fact that the language of the statute specifically delineates what shall be considered "health-care decisions" this Court has found in that a health-care surrogate can bind a patient to arbitration. When addressing whether a surrogate has the

8

authority to bind an incompetent person to an arbitration agreement, this Court summarily stated, "[h]er adult daughter, Goss, was an appropriate member of the classes from which a surrogate could be drawn, and thus, Goss could contractually bind Brown in matters of health care." *Covenant Health Rehab of Picayune, L.P. v. Brown*, 949 So. 2d 732, 737 (Miss. 2007). It is noteworthy that the opinion in *Covenant Health Rehab of Picayune, L.P. v. Brown* did not cite, address, or analyze "health-care decision" as defined in Mississippi Code Annotated Section 41-41-203(h).

¶21. I respectfully disagree with this Court's prior case law regarding a health-care surrogate's ability to bind a patient to arbitration. Hence, I am compelled to write today, even though I agree with the outcome in the instant case. It is clear from a plain-meaning interpretation of the statute that a health-care surrogate is not authorized by Mississippi Code Annotated Section 41-41-203(h) to waive or compromise a patient's property rights, such as the right to trial by jury or civil remedies in negligence, and therefore, cannot bind a patient to arbitration. For the foregoing reasons, I concur in the affirmance of the trial court's judgment.

   **DIAZ, P.J., JOINS THIS OPINION.**