[No. 28108-6-III.   Division Three.   March 18, 2010.]

JOYCE NAIL, *Individually and as Personal Representative*, ET AL., *Respondents*, v. CONSOLIDATED RESOURCES HEALTH CARE FUND I ET AL., *Appellants*.

228

*Carin A. Marney* and *Ryan P. McBride* (of *Lane Powell PC*), for appellants.

*Thomas B. Vertetis* and *Bryan D. Doran* (of *Pfau Cochran Vertetis Kosnoff PLLC*), for respondents.

¶1 BROWN, J. — Consolidated Resources Health Care Fund I, d/b/a Alderwood Manor Nursing and Convalescent Home, and Does 1 through 5 (collectively Alderwood Manor) appeal the trial court's decision not to enforce a predispute arbitration agreement with Joyce Nail, individually and as personal representative of the estate of Ellen Schimpf; Robert Schimpf; Lowell Nail; and Cindy Lane (collectively Ms. Nail). Alderwood Manor contends the trial court erred in deciding the predispute arbitration agreement was unenforceable without a second, postdispute arbitration agreement contemplated in an American Arbitration Association (AAA) "Healthcare Policy Statement." Based on our review of persuasive case authority and consistent with Washington statutory authority, we agree with Alderwood Manor that the AAA policy statement is not an AAA rule of procedure preventing arbitration, reverse, and remand for the trial court to appoint non-AAA arbitrators.

## FACTS

¶2 Alderwood Manor admitted Ms. Schimpf in April 2005. She then signed an arbitration agreement, stating the parties agree "to arbitrate any dispute that might arise between Ellen Schimpf (the 'Resident') and Alderwood Manor (the 'facility')." Clerk's Papers (CP) at 78. The agreement stated an arbitration hearing must be before three arbitrators "selected from the American Arbitration Association (AAA)," and "the arbitrators shall apply the applicable rules of procedure of the AAA." CP at 78. The agreement specified that each party would select one arbitrator and the two selected were to select the third arbitrator. Notably, the AAA issued a "Healthcare Policy Statement" before the parties entered into their arbitration agreement, stating the AAA "will no longer accept the administration of cases involving individual patients without a post-dispute agreement to arbitrate." CP at 35.

¶3 Ms. Schimpf left Alderwood Manor to have surgery. Upon readmittance, she signed another, identical, arbitra-

tion agreement. That night, Ms. Schimpf fell out of bed, hitting her head. She was taken to the hospital where she later died.

¶4 Ms. Nail sued Alderwood Manor for negligence and wrongful death. Because the parties did not sign a postdispute arbitration agreement, the parties disputed whether arbitration was required. Ms. Nail refused to stipulate to arbitration and instead moved to oppose arbitration. In a memorandum decision, the court ruled arbitration was not required because the parties did not enter into a postdispute agreement.[1] After an unsuccessful reconsideration request, Alderwood Manor appealed.

## ANALYSIS

¶5 The issue is whether the trial court erred in ruling the parties' predispute arbitration agreement was wholly unenforceable without the postdispute agreement contemplated in the AAA's Healthcare Policy Statement. Alderwood Manor contends the policy statement is not an AAA rule of procedure and the provision is severable.

¶6 We review arbitrability questions de novo. *Satomi Owners Ass'n v. Satomi, LLC*, 167 Wn.2d 781, 797, 225 P.3d 213 (2009). " 'The party opposing arbitration bears the burden of showing that the agreement is not enforceable.' " *Id.* (quoting *Zuver v. Airtouch Commc'ns, Inc.*, 153 Wn.2d 293, 302, 103 P.3d 753 (2004)). Further, we review de novo a trial court's interpretation of a contract, including an arbitration clause. *Sales Creators, Inc. v. Little Loan Shoppe, LLC*, 150 Wn. App. 527, 530, 208 P.3d 1133 (2009).

¶7 Initially, Ms. Nail argues Alderwood Manor is precluded from arguing on appeal that the Healthcare Policy Statement is not an AAA procedure because this issue was raised for the first time in Alderwood Manor's motion

---

[1] The court, technically, ruled that the arbitration agreement was enforceable but that the enforceability of the terms of the agreement rendered the agreement unenforceable. For our purposes, we will refer to the court's ruling on the agreement as unenforceable.

for reconsideration.[2] But new issues may be raised for the first time in a motion for reconsideration, thereby preserving them for review, where, as here, they are not dependent upon new facts and are closely related to and part of the original theory. *Reitz v. Knight*, 62 Wn. App. 575, 581 n.4, 814 P.2d 1212 (1991) (citing *Newcomer v. Masini*, 45 Wn. App. 284, 287, 724 P.2d 1122 (1986)).

¶8 "If the parties to a contract clearly and unequivocally incorporate by reference into their contract some other document, that document becomes part of their contract." *Satomi Owners Ass'n*, 167 Wn.2d at 801. In *Satomi Owners Ass'n*, the parties entered into a purchase and sale agreement, later signing an addendum containing an arbitration clause that was incorporated by reference. Our Supreme Court upheld the addendum. *Id.* Here, the arbitration agreement states, "In conducting the hearing and all other proceedings relative to the arbitration of the claim(s), the arbitrators shall apply the applicable rules of procedure of the AAA." CP at 78. The AAA's applicable rules of procedure are incorporated by reference and, therefore, are part of the parties' agreement. But Alderwood Manor asserts, and we agree, that the AAA Healthcare Policy Statement is not a rule of procedure.

¶9 Washington favors the arbitration of disputes when parties have agreed to such dispute resolution. *Scott v. Cingular Wireless*, 160 Wn.2d 843, 858, 161 P.3d 1000 (2007). Additionally, the Federal Arbitration Act, 9 U.S.C. § 2, " 'requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms.' " *Satomi Owners Ass'n*, 167 Wn.2d at 798 (quoting *Volt Info. Scis., Inc. v. Bd. of Trs. of Lealand Stanford Junior Univ.*, 489 U.S. 468, 478, 109 S. Ct. 1248, 103 L. Ed. 2d 488 (1989)).

¶10 The term "Rules of Procedure" is not defined in either the incorporated documents from the AAA or

---

[2] Ms. Nail objected below to this argument, but our record does not contain a ruling on her objection, nor does Ms. Nail discuss a trial court ruling in her brief.

Alderwood Manor's arbitration agreement. Thus, we look to the term's ordinary meaning. *Cambridge Townhomes, LLC v. Pac. Star Roofing, Inc.*, 166 Wn.2d 475, 487, 209 P.3d 863 (2009). "To determine the ordinary meaning of an undefined term, our courts look to standard English language dictionaries." *Boeing Co. v. Aetna Cas. & Sur. Co.*, 113 Wn.2d 869, 877, 784 P.2d 507 (1990). Rules of procedure are generally those rules that are set for "a particular way of doing or of going about the accomplishment of something." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1807 (1993). A policy, on the other hand, is "to organize and regulate the internal order." WEBSTER'S, *supra*, at 1754.

¶11 In comparing the two terms, a "procedure" is actually how something is accomplished, while a "policy" is the organization of the internal order of a subject according to management wisdom. For example, in a legislative context, legislators decide policy and pass laws to enact the policy; the laws rather than the policy become the relevant standards of conduct.

¶12 No Washington cases are on point. Alderwood Manor relies on *Oesterle v. Atria Management Co.*, No. 09-4010--JAR, 2009 WL 2043492, 2009 U.S. Dist. LEXIS 60057 (D. Kan.) (unpublished opinion)[3] for the proposition that the policy statement is not a procedure. In *Oesterle*, the plaintiff signed an arbitration agreement partly stating, " 'Arbitration will be conducted in accordance with the rules of the American Arbitration Association.' " 2009 WL 2043492, at *8, 2009 U.S. Dist. LEXIS 60057, at *23. Like here, the parties did not enter into a postdispute arbitration agreement. In reconciling the conflict, the *Oesterle* court held, "[T]he AAA provision covers the rules to abide by when conducting the arbitration, while AAA policy on the types of arbitrable claims is simply just that – AAA's policy." 2009

---

[3] "[C]itation to unpublished opinions from jurisdictions other than Washington State is allowed 'if citation to that opinion is permitted under the law of the jurisdiction of the issuing court.' " *Duncan v. Alaska USA Fed. Credit Union, Inc.*, 148 Wn. App. 52, 68 n.54, 199 P.3d 991 (2008) (quoting GR 14.1(b)). Citation to unpublished cases is permitted in Kansas. D. KAN. R. 7.6(b); *Scherer v. U.S., Dep't of Educ.*, 78 F. App'x 687, 690 n.2 (10th Cir. 2003).

WL 2043492, at \*9, 2009 U.S. Dist. LEXIS 60057, at \*26. The court noted policy favoring arbitration agreements and granted the defendant's motion to compel arbitration. *Id.*

¶13 Additionally, a Florida circuit court reviewed the same issue with strikingly similar facts and held, without lengthy discussion, "The circuit court erred in ruling that the unavailability of the AAA to conduct the arbitration rendered the arbitration agreement unenforceable." *New Port Richey Med. Investors, LLC v. Stern ex rel. Petscher*, 14 So. 3d 1084, 1087 (Fla. Dist. Ct. App. 2009).

¶14 In Mississippi, however, the Supreme Court held that an arbitration agreement was invalid because it was entered preinjury. *Magnolia Healthcare, Inc. v. Barnes ex rel. Grigsby*, 994 So. 2d 159, 162 (Miss. 2008). But, in that case the parties agreed to be bound to the American Health Lawyers Association Alternative Dispute Resolution Service Rules of Procedure, and one of the rules expressly requires an agreement in writing to arbitrate " 'after the injury.' " *Id.* at 161 (emphasis omitted) (quoting AM. HEALTH LAWYERS ASS'N ALTERNATIVE DISPUTE RESOLUTION SERV. RULE OF PROCEDURE 1.01 (1991 Rev. 2003)).

¶15 Here, the Healthcare Policy Statement shows AAA's wisdom in managing individual health care claims submitted to it for arbitration; AAA arbitrators will not administer individual health care claims without a postdispute agreement. AAA did not and could not invalidate all predispute arbitration agreements regarding individual health care claims unsupported by an additional postdispute arbitration agreement. Notably, AAA did not legislate its policy statement into a specified rule of procedure.

¶16 Here, the parties' arbitration agreement states the arbitrators must be "selected from the American Arbitration Association (AAA)." CP at 78. While the method of choosing arbitrators was specified, the agreement did not require exclusive AAA administration. Thus, solely the method of selecting arbitrators failed. The next inquiry is, therefore, whether the trial court erred in not appointing

alternative arbitrators when the parties' arbitration method failed. RCW 7.04A.110(1) provides:

> If the parties to an agreement to arbitrate agree on a method for appointing an arbitrator, that method must be followed, unless the method fails. If the parties have not agreed on a method, the agreed method fails, or an arbitrator appointed fails or is unable to act and a successor has not been appointed, the court, on motion of a party to the arbitration proceeding, shall appoint the arbitrator. The arbitrator so appointed has all the powers of an arbitrator designated in the agreement to arbitrate or appointed under the agreed method.

¶17 In *New Port Richey Medical Investors*, the court held, "[T]he parties' arbitration agreement is not rendered invalid or unenforceable simply because the AAA is unavailable to conduct the arbitration. Instead, the circuit court must appoint another arbitrator or arbitrators." *New Port Richey Med. Investors*, 14 So. 3d at 1087. Here, like in *New Port Richey Medical Investors*, the court must appoint other arbitrators in accordance with RCW 7.04A.110 and the parties' arbitration agreement.

¶18 In sum, the AAA's Healthcare Policy Statement is not a rule of procedure that invalidates predispute arbitration agreements; rather, it is AAA's expression of wisdom guiding what cases it will accept for administration. Because the AAA is unavailable to conduct the arbitration and solely the method for arbitrator selection has failed, we remand for the court to appoint other arbitrators so the parties may initiate their agreed arbitrator selection process. Because Ms. Nail does not prevail, we do not reach her request for attorney fees as prevailing party under RAP 18.1 and RCW 74.34.200, the Washington abuse of vulnerable adult act.

¶19 Reversed and remanded with instructions.

Kulik, C.J., and Sweeney, J., concur.