# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2012-CA-00145-SCT

*NORMA SLATER-MOORE*

*v.*

*CHRISTIAN T. GOELDNER, PAIGE ANN MCDOWELL AND THE GOELDNER LAW FIRM PROFESSIONAL CORPORATION, f/k/a GOELDNER & GILL, ATTORNEYS AT LAW, PROFESSIONAL CORPORATION, f/k/a GOELDNER, MCDOWELL, ABBOTT & GILL, ATTORNEYS AT LAW, PROFESSIONAL CORPORATION, f/k/a GOELDNER, PORTER & MCDOWELL, ATTORNEYS AT LAW, PROFESSIONAL CORPORATION, f/k/a GOELDNER AND WALSH, ATTORNEYS AT LAW, PROFESSIONAL ASSOCIATION*

| | |
|---|---|
| DATE OF JUDGMENT: | 01/03/2012 |
| TRIAL JUDGE: | HON. ROBERT P. CHAMBERLIN |
| COURT FROM WHICH APPEALED: | DESOTO COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | JOHN B. GILLIS |
| ATTORNEYS FOR APPELLEES: | STEVEN JAMES GRIFFIN |
| | J. WYATT HAZARD |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | AFFIRMED - 04/11/2013 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE RANDOLPH, P.J., LAMAR AND CHANDLER, JJ.**

**CHANDLER, JUSTICE, FOR THE COURT:**

¶1.    Norma Slater-Moore hired the Goeldner Law Firm and its various attorneys to

represent her in what ultimately was an unsuccessful lawsuit and its appeal. Slater-Moore and Goeldner entered into two separate contracts during the course of that litigation, both containing nearly identical provisions stating that any attorney-fee disputes would be submitted to arbitration. Slater-Moore later sued Goeldner for legal malpractice and breach of contract, disputing, among other allegations, the amount she was billed for attorney fees. Goeldner successfully moved the Circuit Court of DeSoto County to compel arbitration of the attorney-fee dispute, and Slater-Moore appeals that decision to this Court. Because we find no grounds for revocation of this valid agreement to arbitrate the fee dispute, we affirm the circuit court's judgment.

## FACTS

¶2.     In June 2007, Slater-Moore entered into a contract for legal services with Goeldner to represent her in a claim regarding the purchase of her home.[1] The contract provided details for a mixed flat fee and hourly rate for Goeldner's legal services. Page two of the contract contained an arbitration provision, which specified the following:

> **Dispute as to Attorney's Fees/Collection of Fees.**
> Should a dispute as to the entitlement or the amount of legal fees arise, the parties agree to submit such a dispute [to] arbitration in accordance with the Mississippi Bar Fee Dispute Resolution Procedure. Any decision shall be final and binding on the parties. Each party shall bear its own costs and attorney's fees through any such proceeding.

Two paragraphs below the arbitration provision, the contract states in bold-print and all-capital letters: "THIS CONTRACT WAS DISCUSSED IN DETAIL, ALL QUESTIONS

---

[1] The lawsuit was filed in DeSoto County Circuit Court, styled ***Slater-Moore v. Bailey, et al.***, Civil Action No. CV07-0170 C/D.

ABOUT ITS CONTENT, MEANING AND SCOPE WERE ANSWERED, AND CLIENT

ACKNOWLEDGES RECEIPT OF COPY." Slater-Moore signed directly below this

statement.

¶3.     The trial court entered summary judgment against Slater-Moore in October 2008. That

same month, Slater-Moore entered into another legal-services contract with Goeldner to

handle her appeal of that decision.[2] This contract contained an arbitration provision nearly

identical to the June 2007 contract:

> **Dispute as to Attorney's Fees/Collection of Fees.**
> Should a dispute as to the entitlement or the amount of legal fees arise, the
> parties agree to submit such a dispute to the Mississippi Bar Fee Dispute
> Resolution Procedure, whose decision shall be final and binding on the parties.
> Each party shall bear its own costs and attorney's fees through any such
> proceeding.

The October 2008 contract also contained a provision identical to that in the June 2007

contract, stating that the contract had been discussed in detail and that all questions regarding

its meaning and scope were answered. The provision was in boldface, in the same size font,

and in the same location as in the June 2007 contract. Slater-Moore signed directly below the

provision.

¶4.     After losing her appeal, Slater-Moore sued Goeldner in the Circuit Court of DeSoto

County for legal malpractice, also alleging breach of contract, misrepresentation, and bad

faith. Further, Slater-Moore claimed that Goeldner had engaged in billing misconduct by

billing her legal fees in excess of the mixed flat fee and hourly rates provided for in the

---

[2] ***Moore v. Bailey***, 46 So. 3d 375 (Miss. Ct. App. 2010).

contracts. The June 2007 contract had specified an hourly rate of up to $300 per hour for work not covered by the flat fee. It also stated that the flat fees did not cover costs and expenses, which would be billed separately. Slater-Moore seeks damages and a refund of the amount she previously paid Goeldner, including the retainer fee, administrative costs, and attorney fees paid under the June 2007 contract.[3] Slater-Moore's actual damages sought total $131,655,61.

¶5.     Goeldner filed a motion to compel arbitration of the claims regarding excessive or improper legal fees. On January 3, 2012, the circuit court granted the motion, finding that a valid arbitration agreement existed as to the fee dispute between the parties and that the Mississippi Bar Fee Dispute Resolution Committee was the appropriate arbitral forum for the fee dispute. The trial court reasoned that Slater-Moore had the burden to show she was excused from the arbitration agreement and that she did not meet that burden. In addition, the court stated that Slater-Moore's remaining claims regarding legal malpractice, tortious conduct, and punitive damages would be litigated in circuit court if not arbitrable by the Mississippi Bar. Slater-Moore sought interlocutory appeal from the trial court's order, and we determined her interlocutory appeal actually constituted a direct appeal and that her petition would be treated as a notice of direct appeal.

## STANDARD OF REVIEW

[3]Slater-Moore has paid only a portion of the amount billed in the June 2007 contract. The October 2008 contract required an initial payment of $3,500 to cover the costs of the appeal and an outstanding balance to the mediator. In regard to the October 2008 contract, Goeldner argues that Slater-Moore has paid only $2,215.05 toward the bills for her legal fees and still has a large outstanding amount due.

4

¶6.     We review the grant or denial of a motion to compel arbitration de novo. ***East Ford, Inc. v. Taylor***, 826 So. 2d 709, 713 (Miss. 2002).  Our sole function is to determine whether the claim is referable to arbitration. ***Terminix Int'l, Inc. v. Rice***, 904 So. 2d 1051, 1054-55 (Miss. 2004) (citation omitted). We will not consider or weigh the merits of the dispute itself. ***IP Timberlands Operating Co., Ltd. v. Denmiss Corp.***, 726 So. 2d 96, 108 (Miss. 1998).

## DISCUSSION

¶7.     "We recognize that the use of arbitration to resolve disputes finds favor under federal and state law." ***Covenant Health & Rehab. of Picayune, LP v. Estate of Moulds***, 14 So. 3d 695, 698 (Miss. 2009). Mississippi Code Section 11-15-1 allows competent parties to submit an existing dispute to an arbitrator.  Miss. Code Ann. § 11-15-1 (Rev. 2004).  Moreover, in ***IP Timberlands***, we overturned our prior cases holding that predispute arbitration clauses are unenforceable and "expressly state[d] that this Court will respect the right of an individual or an entity to agree in advance of a dispute to arbitration or other alternative dispute resolution.  ***IP Timberlands***, 726 So. 2d at 103-04. Therefore, "[a]rticles of agreement to arbitrate, and awards thereon are to be liberally construed so as to encourage the settlement of disputes and the prevention of litigation, and every reasonable presumption will be indulged in favor of the validity of arbitration proceedings." ***Id***. at 106 (quoting ***Hutto v. Jordan***, 204 Miss. 30, 42, 36 So. 2d 809, 812 (1948)).

¶8.     The Federal Arbitration Act governs the enforcement of arbitration contracts that evidence a transaction in interstate commerce. ***Id.*** at 107. In the present case, the Circuit Court found that the Federal Arbitration Act did not apply because the contracts did not

affect interstate commerce. Since the *IP Timberlands* decision, we have not had an opportunity to determine the enforceability of a predispute arbitration agreement that did not in some way involve interstate commerce. However, in *University Nursing Associates, PLLC v. Phillips*, we decided whether a party had waived its right to arbitrate a dispute arising from such a contract. *Phillips*, 842 So. 2d 1270 (Miss. 2003). We chose to "follow the case law which interprets the Act because the case law is based on sound principles which are easily transferable to non-interstate commerce litigation." *Id.* at 1276 n.6. We adopt the same approach in this case, and will follow the caselaw interpreting the Federal Arbitration Act to determine whether a contract that does not involve interstate commerce may be enforced.

¶9.    Cases decided under the Federal Arbitration Act require a two-prong inquiry for analyzing a motion to compel arbitration: (1) "whether the parties intended to arbitrate the dispute," and if so, (2) "whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims." *Scruggs  v. Wyatt*, 60 So. 3d 758, 766 (Miss. 2011) (quoting *Qualcomm Inc. v. Am. Wireless License Group*, 980 So. 2d 261, 268 (Miss. 2007)). In assessing the first prong, we first must determine whether there was a valid arbitration agreement, and then we must consider whether the dispute falls within the scope of that agreement. *Scruggs*, 60 So. 3d at 766. Under the second prong, we will consider arbitration agreements to be "valid, irrevocable, and enforceable," unless we determine that the contract is revocable "upon such grounds as exist at law or in equity for the revocation

6

of any contract." *Id.* at 776-77 (quoting *Terminix Int'l, Inc. v. Rice*, 904 So. 2d 1051, 1055 (Miss. 2004)).

**I.      Whether the June 2007 and October 2008 arbitration agreements were valid and enforceable.**

**A.      June 2007 Contract**

¶10.    Arbitration provisions and awards should "be liberally construed so as to encourage the settlement of disputes and the prevention of litigation, and every reasonable presumption will be indulged in favor of the validity of arbitration proceedings." *IP Timberlands*, 726 So. 2d at 106 (citation omitted).

¶11.    Slater-Moore claims that the arbitration provision is unenforceable because neither a representative for the defendants nor any of the defendants signed the contract. A fundamental principle of contract law is that the mutuality of assent to the terms of a contract may be shown by the acts or conduct of the parties where a signature is lacking. *See Turney v. Marion County Bd. of Educ.*, 481 So. 2d 770, 774 (Miss. 1985).  It is undisputed that Goeldner drafted the contract. Slater-Moore signed on the last page of the two-page contract, directly above the typed name of the Goeldner firm. Further, after the contract was signed, the parties proceeded with legal representation in accordance with the terms of the contract through discovery, mediation, and pretrial motions.  During this time, Slater-Moore paid Goeldner for its legal services. The parties' actions make it clear that they intended to be bound by the terms of the written agreement.

7

¶12.    Slater-Moore mistakenly relies on this Court's decision in ***Byrd v. Simmons***, 5 So. 3d 384 (Miss. 2009), to show that the arbitration agreement lacked mutual assent and is therefore invalid. She also argues that the arbitration agreement should be considered separately from the rest of the 2007 legal-services contract. In ***Byrd***, we held that an arbitration agreement lacked mutual assent because the nursing home admitted that the plaintiff did not have an authorized representative sign the arbitration agreement. ***Id.*** at 389. We also found that the arbitration agreement in that case was a *completely separate agreement* from the admissions agreement. ***Id.*** Unlike in ***Byrd***, however, Slater-Moore actually signed the two-page contract for legal services containing the arbitration provision on the second page. Slater-Moore's argument is without merit.

¶13.    Further contesting the validity of the arbitration clause, Slater-Moore also argues that the Mississippi Bar is an inappropriate forum because there is no post-dispute agreement to arbitrate. Slater-Moore relies on this Court's decision in ***Magnolia Healthcare, Inc. v. Barnes***, 994 So. 2d 159 (Miss. 2008). However, in ***Barnes***, the contract containing the arbitration agreement stated that any disputes "shall be resolved exclusively by binding arbitration . . . in accordance with the American Health Lawyers Association Alternative Dispute Resolution Service Rules of Procedure for Arbitration, *which are hereby incorporated into this agreement*." ***Barnes***, 994 So. 2d at 161 (emphasis added). The rules of the American Healthcare Lawyers Assocation Alternative Dispute Resolution Service stated that no claims arising on or after January 1, 2004, would be arbitrated unless "all of the parties have agreed in writing to arbitrate the claim after the injury has occurred and a

8

copy of the agreement is received by the Service." *Id.* at161. Because the parties did not agree to arbitrate after the injury, which occurred after January 1, 2004, we held that the contract did not operate as a valid arbitration agreement. *Id.* at 162.

¶14.    The rules of the Mississippi Bar Fee Dispute Procedure do require both parties to sign, after a dispute arises, a "consent to Mediation or Binding Arbitration form" or else "the matter shall be closed because of lack of jurisdiction."[4] However, the arbitration agreement Slater-Moore signed states that if a fee dispute arises, "the parties *agree to submit* such a dispute [to] arbitration in accordance with the rules of the Mississippi Bar Fee Dispute Resolution Procedure." When Slater-Moore signed the representation contract, she actually agreed to follow the procedure for submitting a fee dispute to the Mississippi Bar – that is, to sign the required consent form. There is no reason this Court should not compel a party to submit a post-contract dispute to arbitration if a valid arbitration agreement so requires. Because Slater-Moore and Goeldner entered into a binding contractual agreement to submit fee disputes before the Mississippi Bar for arbitration, Slater-Moore must comply with the circuit court's order that she do so.

¶15.    Finally, Slater-Moore says the arbitration provision is unenforceable because it does not contain the word "exclusive" and therefore constitutes a permissive forum-selection clause. We have held that forum-selection clauses are "presumptively valid and enforceable," and that the resisting party has the burden of showing that the clause is unreasonable. *Long*

---

[4] The Mississippi Bar, *Fee Dispute Resolution Committee Rules of Procedure,* http://www.msbar.org/media/247468/42b.pdf (last visited April 9, 2013).

9

***Beach Auto Auction, Inc. v. United Sec. Alliance, Inc.***, 936 So. 2d 351, 355 (Miss. 2006). However, Slater-Moore has failed to cite any legal authority supporting her position that the arbitration agreement operates as an impermissible forum-selection clause. We find no grounds upon which to invalidate the 2007 agreement.

**B.     October 2008 Contract**

¶16.    In addition to Slater-Moore's previous arguments regarding the 2007 contract, she also argues that the October 2008 contract is unenforceable because it does not contain the word "arbitration." However, the provision in the 2008 contract is nearly identical to the provision in the 2007 contract, which included the word "arbitration." It is in the same font size as the other paragraphs in the contract and requires disputes on legal fees to be submitted to the Mississippi Bar Fee Dispute Resolution Committee. Further, the provision states that the committee's decision will be "final and binding" on both parties. There is no other possible interpretation of the provision, as arbitration is the only fee-dispute resolution service provided by the Mississippi Bar that can be considered "final and binding." In addition, Slater-Moore signed directly below the provision that stated she had discussed the contract in detail with her attorneys and *that all questions about its content, meaning and scope were answered*. This provision is unambiguous and should be construed as written. ***Whittington v. Whittington***, 608 So. 2d 1274, 1278 (Miss. 1992).

¶17.    The arbitration agreements in both the 2007 and 2008 contracts were valid, and we must now look to whether the parties' dispute falls within the scope of the arbitration agreements.

**II.      Whether Slater-Moore's claims regarding excessive or improper legal fees fall within the scope of the arbitration agreements.**

¶18.      All doubts concerning the scope of arbitrable issues, the construction of the contract language, and asserted defenses to arbitration must be resolved in favor of arbitration. *MS Credit Ctr., Inc. v. Horton*, 926 So. 2d 167, 175 (Miss. 2006). Slater-Moore argues that there is no fee dispute at issue. We disagree. Although Slater-Moore's complaint raises claims of legal malpractice, she specifically challenges the amount Goeldner charged for its legal services, which falls within the scope of the arbitration provisions.  She says that she should not have been charged more than $10,000 under the June 2007 contract and that Goeldner engaged in misconduct by charging more than that amount.  The fee dispute in this case is clear – Slater-Moore's complaint alleges that she was charged excessive or improper legal fees in the construction-defect litigation.  Therefore, Slater-Moore's argument that there is no fee dispute is without merit.

¶19.      Slater-Moore also attempts to avoid the arbitration provision in regard to the fee dispute by stating that she also brought claims for breach of contract, deceit, misrepresentation, and bad faith, none of which is arbitrable in the present case. Specifically, she argues that, because those claims do not fall within the scope of the agreements, she should not be forced to arbitrate her claim regarding Goeldner's alleged excessive legal fees. This argument is puzzling, as the trial court clearly explained in its order that Goeldner was "entitled to arbitration of the fee dispute and the fee dispute only." The fact that Slater-

11

Moore's other claims fall outside the scope of the arbitration provisions does not take the fee dispute outside the scope of the agreement.

¶20.    Slater-Moore relies on *Rogers-Dabbs Chevrolet-Hummer, Inc. v. Blakeney*, 950 So. 2d 170 (Miss. 2007), and argues that she could not have agreed to arbitrate fraud claims. This argument also is misplaced. *Blakeney* involved a civil-fraud claim against a car dealership and involved the use of personal and corporate identities to engage in criminal activity unrelated to the purchase agreement at issue. *Id*. at 172. We affirmed the trial court's decision to sever the nonarbitrable civil-fraud claims from those which were arbitrable. *Id*. at 178.   The same principle is applicable in the present case. The trial court ordered arbitration of only the fee dispute, which clearly falls within the scope of the arbitration provisions. The agreement does not require the non-fee-dispute claims to be submitted to arbitration, and Slater-Moore is free to pursue those claims through the courts.

¶21.    Because there is a valid arbitration agreement regarding the fee dispute and the fee-dispute allegations fall within the scope of that agreement, the first prong of the FAA has been satisfied.

### III.    Whether external legal constraints prevented enforcement of the arbitration agreements.

¶22.    After analyzing whether the parties intended to arbitrate, this Court must determine "whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims." *Scruggs*, 60 So. 3d at 766 (citations omitted). Slater-Moore must demonstrate

that the arbitration agreement is revocable "upon such grounds as exist at law or in equity for the revocation of any contract." *Terminix Int'l*, 904 So. 2d at 1055.

¶23.   Slater-Moore argues that the requirements of the arbitration agreements in the contracts are procedurally unconscionable. This Court has defined unconscionability as "'an absence of meaningful choice on the part of one of the parties, together with contract terms which are unreasonably favorable to the other party.'" *Cleveland v. Mann*, 942 So. 2d 108, 114 (Miss. 2006) (quoting *East Ford*, 826 So. 2d at 715). To prevail on a claim of procedural unconscionability, Slater-Moore must show "a lack of knowledge, lack of voluntariness, inconspicuous print, the use of complex legalistic language, disparity in sophistication or bargaining power of the parties and/or a lack of opportunity to study the contract and inquire about the contract terms." *Id.* (quoting *East Ford*, 826 So. 2d at 714).

¶24.   The facts in *Terminix* are very similar to the present case. There, the plaintiffs said that the contract at issue was procedurally unconscionable because they were unaware of the arbitration clause in the contract and also unaware of its meaning. *Terminix Int'l*, 904 So. 2d at 1055.  We rejected plaintiffs' argument, stating that the contract was only two pages long, and that the arbitration clause appeared under its own subheading in bold capital letters. *Id*. at 1056-57. Further, we stated that there was no evidence that the plaintiffs lacked an opportunity to inquire about the terms of the contract. *Id*.

¶25.   Slater-Moore has shown no evidence that she was unaware of the terms of the agreement or that she was not allowed the opportunity to discuss the terms of the contracts before signing them.  In fact, her signature is located directly below the following clauses in

13

both contracts: "THIS CONTRACT WAS DISCUSSED IN DETAIL, ALL QUESTIONS ABOUT ITS CONTENT, MEANING AND SCOPE WERE ANSWERED, AND CLIENT ACKNOWLEDGES RECEIPT OF COPY." Under Mississippi law, "a contracting party is under a legal obligation to read a contract before signing it" and will be charged with knowing the contract's contents. **Terminix Int'l**, 904 So. 2d at 1056. We find no procedural unconscionability in this contract.

¶26.    In the alternative, Slater-Moore asks this Court to adopt a rule that arbitration agreements in attorney-client contracts are *per se* improper.  In doing so, Slater-Moore refers to Mississippi Rule of Professional Conduct 1.8(h), which states that a lawyer "shall not make an agreement prospectively limiting the lawyer's liability to a client for malpractice unless permitted by law and the client is independently represented in making the agreement." Miss. R. Prof'l Conduct R. 1.8(h). Slater-Moore specifically argues that a lawyer should not be allowed to use an arbitration provision as a mechanism to avoid a jury trial when sued for breach of contract. However, that is not the issue in the present case.  There are no limitations on Slater-Moore's damages or in her filing of claims.  The trial court reserved the right to hear the claims involving punitive damages, tortious conduct, and breach of contract.  Therefore, Slater-Moore is required to arbitrate only her claims regarding Goeldner's alleged excessive or improper legal fees, not her malpractice claims.

¶27.    Slater-Moore acknowledges that the American Bar Association has stated that predispute arbitration agreements in attorney-client contracts are appropriate as long as the attorney complies with his fiduciary duty under ABA Rule 1.4(b). The rules require the

14

attorney to give the client an adequate explanation by disclosing the advantages and disadvantages of arbitration. ABA Model Rules of Prof'l Conduct R. 1.4. (2012). Slater-Moore's signature is on page two of the two-page contract, directly below a clause stating that the contract was discussed in detail. The arbitration provision also is on page two of the contract. There is no evidence that Goeldner breached his fiduciary duty to explain the arbitration agreement.

¶28.   Further, the comments to ABA Rule 1.5 state the following in regard to disputes over fees:

> If a procedure has been established for resolution of fee disputes, such as an arbitration or mediation procedure established by the bar, the lawyer must comply with the procedure when it is mandatory, and, even when it is voluntary, the lawyer should conscientiously consider submitting to it. Law may prescribe a procedure for determining a lawyer's fee, for example, in representation of an executor or administrator, a class or a person entitled to a reasonable fee as part of the measure of damages. The lawyer entitled to such a fee and a lawyer representing another party concerned with the fee should comply with the prescribed procedure.

ABA Model Rules of Prof'l Conduct R. 1.5. cmt. (2012). The Mississippi Bar has established the Mississippi Bar Fee Dispute Resolution Committee as a forum for fee disputes such as this one. In *Pre-Paid Legal Services, Inc. v. Battle*, we upheld an arbitration agreement between the plaintiff and a defendant legal-services company. *Battle*, 873 So. 2d 79, 82 (Miss. 2004). The Mississippi statute permitting prepaid legal-expense agreements allows for such agreements as long as they contain "[a] statement describing a procedure for settling disputes between or among the sponsor, *participating or staff attorneys*, and the subscribers." *Id.* at 82. (citing Miss. Code Ann. § 83-49-13(2)(f)) (emphasis added). We further noted that

15

individuals and entities have the right to "agree in advance of a dispute to arbitration or other alternative dispute resolution." *Id.* (citation omitted). The agreement is not unethical and we decline to adopt the *per se* rule Slater-Moore would have us apply.

¶29. The arbitration provisions are not procedurally unconscionable, and we find no external legal constraints which foreclose the arbitration of the fee dispute. Because the requirements of the two-prong test have been met, we affirm the trial court's order compelling arbitration.

¶30. Finally, Slater-Moore also argues that, assuming there was a valid arbitration agreement, she should be able to revoke the arbitration provision contained in the legal-services contract because she explicitly revoked the arbitration option through her suit against Goeldner and her response to the motion for arbitration. We again emphasize our decision in *IP Timberlands* which removed any uncertainty surrounding an individual's choice to arbitrate, stating "that this Court will respect the right of an individual or an entity to agree in advance of a dispute to arbitration or other alternative dispute resolution." *IP Timberlands*, 726 So. 2d at 104. As a result, this Court rejected the line of caselaw allowing a contracting party to revoke an arbitration agreement if it did so before an award was made. *Id*. Slater-Moore is bound by her decision to arbitrate the fee dispute with Goeldner.

## CONCLUSION

¶31. The legal-services contracts contain valid and enforceable arbitration agreements as to all disputes regarding legal fees. Slater-Moore's claims regarding excessive or improper legal fees fall within the scope of the arbitration agreements, and there are no external legal

16

constraints that preclude enforcement of the arbitration provisions. We affirm the trial court's order compelling arbitration of the fee dispute.

¶32.    **AFFIRMED.**

**WALLER, C.J., RANDOLPH, P.J., LAMAR, KITCHENS, PIERCE, KING AND COLEMAN, JJ., CONCUR.  DICKINSON, P.J., NOT PARTICIPATING.**