KING, C.J.,
 

 for the Court.
 

 ¶ 1. Elzenia Johnson filed a wrongful death suit against Trinity Mission Health and Rehabilitation of Clinton (Trinity) alleging that her mother, Mary Scott, suffered injuries during her stay which caused her death. Trinity filed a motion to stay the proceedings and compel arbitration pursuant to the admission agreement, which was denied. Aggrieved, Trinity appeals. We find error and reverse and remand.
 

 
 *738
 
 FACTS
 

 ¶ 2. On January 4, 2001, Johnson admitted her mother to Trinity and thereby signed an admission agreement. On that same day, Johnson executed a document authorizing Trinity to perform CPR on her mother if necessary, as well as a Medicare Secondary Payer Questionnaire. Several months later, Johnson executed a patient fund authorization, which allowed Trinity to manage Scott’s account according to its established policies.
 

 ¶ 3. On September 13, 2002, Johnson signed the amended admission agreement which contained an arbitration agreement. Then, on July 25, 2003, Johnson signed a Resident Pharmacy Choice Opinion. Scott departed this life on January 26, 2004.
 

 ¶4. On August 25, 2004, Johnson filed suit in Hinds County Circuit Court alleging that Scott suffered injuries while residing at Trinity. Trinity answered, preserving several affirmative defenses including arbitration.
 

 ¶ 5. On October 28, 2005, Trinity filed a motion to compel arbitration, pursuant to the arbitration clause found in the admission agreement Johnson signed on September 13, 2002. Johnson responded contending that the arbitration agreement was unenforceable because she never had the authority to waive Scott’s right to a jury trial.
 

 ¶ 6. The trial court conducted a hearing on the matter and denied Trinity’s motion to compel arbitration. Aggrieved, Trinity now appeals.
 

 STANDARD OF REVIEW
 

 ¶ 7. We review the grant or denial of a motion to compel arbitration de novo.
 
 East Ford, Inc. v. Taylor,
 
 826 So.2d 709, 713(¶ 9) (Miss.2002). Since the supreme court has held that arbitration agreements contained in nursing home admission agreements affect interstate commerce, we view this arbitration agreement within the framework of the Federal Arbitration Act (FAA).
 
 Vicksburg Partners, L.P. v. Stephens,
 
 911 So.2d 507, 515(¶ 16) (Miss.2005).
 

 ¶ 8. The FAA creates a two-pronged inquiry to determine the validity of a motion to compel arbitration.
 
 East Ford, Inc.,
 
 826 So.2d at 713(¶ 9). First, we must determine whether the parties intended to arbitrate the suit.
 
 See id.
 
 at (¶ 10). This involves two considerations: (1) whether there is a valid arbitration agreement and (2) whether the dispute is within the scope of that agreement.
 
 Id.
 

 ¶ 9. The second prong is whether “legal constraints external to the parties’ agreement foreclose[s] the arbitration of those claims.”
 
 Id.
 
 (quoting
 
 Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,
 
 473 U.S. 614, 626, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985)). This involves such contract defenses as “fraud, duress, and uneonscionability.”
 
 Id.
 
 (citing
 
 Doctor’s
 
 As
 
 socs., Inc. v. Casarotto,
 
 517 U.S. 681, 686, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996)).
 

 ANALYSIS
 

 ¶ 10. In accordance with the framework laid out by the FAA, our analysis begins with the issue of whether the parties intended to arbitrate this claim.
 

 I. Whether the parties intended to arbitrate this issue.
 

 ¶ 11. To determine this issue, we must first look at whether there was a valid arbitration agreement. Without such an agreement, the motion to compel arbitration must be denied.
 

 A. Whether a valid arbitration agreement existed.
 

 ¶ 12. Trinity argues that the admission agreement containing the arbitration
 
 *739
 
 agreement is valid and enforceable. Johnson counters by stating that Scott never signed the admission agreement. Further, Johnson argues that while she signed the agreement as Scott’s “responsible party,” she lacked the authority to waive Scott’s right to a jury trial.
 

 ¶ 13. Trinity contends that Johnson did have authority to waive Scott’s right to a jury trial through three alternatives: (1) that Johnson could bind her mother as a health care surrogate through Mississippi Code Annotated Section 41-41-201 (Rev. 2005); (2) that Johnson had the authority based on principles of agency; and (3) that Scott received the benefits from the contract, even though she was a non-signatory to the contract.
 

 ¶ 14. To determine whether Johnson had the required authority, we must still apply ordinary principles of contract law.
 
 Terminix Int’l, Inc. v. Rice,
 
 904 So.2d 1051, 1055(¶ 9) (Miss.2004).
 

 ¶ 15. We first address whether Scott was bound to arbitrate as a third-party beneficiary. Trinity argues that Scott received services based upon the terms and conditions of the contract. Since Scott received services from a contract that was executed for her benefit, her wrongful death beneficiaries are bound to the contract including arbitration.
 
 Miss. Fleet Card, L.L.C. v. Bilstat, Inc.,
 
 175 F.Supp.2d 894, 902 (S.D.Miss.2001). Johnson counters by relying on a Fifth Circuit Case that applied Texas law to determine that two minor children were not third-party beneficiaries.
 
 Fleetwood Enters. v. Gaskamp,
 
 280 F.3d 1069, 1075 (5th Cir.2002). Unlike
 
 Gaskamp,
 
 we apply Mississippi law in addressing this case.
 

 ¶ 16. Johnson acknowledges that “arbitration agreements are enforceable to non-signatories to the contract when the non-signatory party is a third-party beneficiary.”
 
 Adams v. Greenpoint Credit, LLC,
 
 943 So.2d 703, 708(¶ 15) (Miss.2006). However, Johnson alleges that Scott was not a third-party beneficiary. To address this point, we take a much closer look at
 
 Adams.
 

 ¶ 17. In
 
 Adams,
 
 the supreme court addressed a situation involving a motion to compel arbitration against a non-signatory to a contract.
 
 Id.
 
 at 704(¶ 1). There, the suit arose from a contract where Eddie Adams (Eddie) and his wife, Linda Adams purchased a mobile home.
 
 Id.
 
 at (¶ 2). In order to purchase the mobile home, the Adams secured a loan against the mobile home and signed a contract that included an arbitration provision.
 
 Id.
 
 Several years later, Greenpoint Credit, LLC, the company to which the contract had been assigned, presented a draft against Eddie and Beth Brown’s joint checking account.
 
 Id.
 
 at (¶ 3). The draft was “ ‘Signed: Linda G. Adams’ by ‘Authorized Representative Greenpoint Credit.’ ”
 
 Id.
 
 at 704-05(¶ 3). However, Linda was deceased at the time that the draft was presented for payment.
 
 Id.
 
 at 705(¶ 3). Brown, Adams’s daughter, was not mentioned in the contract. Id. at 704(¶ 1).
 

 ¶ 18. Eddie and Brown sued Green-point for an unauthorized draft of their joint checking account. Id. at 705(¶ 3). Greenpoint then sought to compel arbitration against both parties in accordance with the arbitration provision in the original contract. Id. at (¶ 4). The supreme court enforced arbitration against Adams, but found that Brown was not subject to the arbitration provision.
 
 Id.
 
 at 709(¶ 18). In its reasoning, the supreme court stated that Brown was never a party to the original contract, and she was not a third-party beneficiary.
 
 Id.
 
 at 710(¶ 18).
 

 ¶ 19. In its determination that Brown was not a third-party beneficiary, the supreme court stated:
 

 
 *740
 
 Nothing in the plain language of the arbitration provision indicates a clear intent of the parties to make Brown a third-party beneficiary. She did not sign the contract, was in no way alluded to in the contract, and, based on the record before us, received no benefits from the contract.... [T]here is no evidence that the contract was “entered for [her] benefit[;]”
 
 id.,
 
 there is no evidence that any benefit flowed to her as a “direct result of the performance within the contemplation of the parties as shown by its terms[;]”
 
 id.,
 
 or that her suit “spring[s] from the terms of the contract itself.”
 
 Id.
 
 As Brown is not a third-party beneficiary to whom the benefits of the contract attach, she is not bound by the arbitration provision.
 

 Adams,
 
 943 So.2d at 709(¶ 15) (Miss.2006) (citing
 
 Burns v. Washington Savs.,
 
 251 Miss. 789, 796, 171 So.2d 322, 325 (1965)).
 

 ¶ 20. The facts of this case clearly establish that Scott was a third-party beneficiary of the contract, unlike Brown. While Scott did not sign the contract, the plain language of the contract makes it very clear that its sole purpose is to bind Trinity to provide services for Scott. The benefit that she received was the healthcare services that were laid out in the admissions agreement. Finally, these rights and benefits bestowed upon Scott sprang forth from the terms of the contract.
 

 ¶ 21. We find that Scott was a third-party beneficiary of the contract; therefore, she was bound to arbitrate any claims within the scope of the arbitration provision. Since this suit is a derivative action, Johnson must stand in the position of the decedent.
 
 Carter v. Miss. Dep’t of Corr.,
 
 860 So.2d 1187, 1192(¶ 17) (Miss.2003). Since Scott’s claims would have been subject to arbitration, Johnson is likewise subject to the arbitration provision.
 

 ¶22. Pursuant to Mississippi Rule of Appellate Procedure 28(j), Johnson sought to inform this Court of the recently decided supreme court case
 
 Grenada Living Ctr., LLC v. Coleman,
 
 961 So.2d 33 (Miss.2007). There, the supreme court held that Cephus Coleman, a non-signatory to a contract, was not a third-party beneficiary.
 
 Id.
 
 at 38(1117). While the supreme court held that Coleman was not a third-party beneficiary to the contract, it stated that the “case does not stand for the proposition that non-signatories can never be bound to arbitration.”
 
 Id.
 
 Here, we do not find sufficient evidence to avail us of the binding precedent that we have addressed, and the supreme court discussed in
 
 Coleman.
 
 Therefore, while
 
 Coleman
 
 is similar to the case before us, we do not find it determinative of this issue.
 

 ¶ 23. Having established that Scott and Johnson, as a wrongful-death beneficiary, were subject to the arbitration provision found in the admission agreement, we decline to address the remaining allegations presented by Trinity. We now turn our attention to the remainder of the FAA framework.
 

 B. Whether the dispute is within the scope of the arbitration agreement.
 

 ¶ 24. The second consideration under the first prong of the FAA framework is whether the dispute is within the scope of the arbitration provision. The arbitration provision provided that “[t]he Resident and Responsible Party agree that any and all claims, disputes, and/or controversies between them and the Facility or its Owners, officers, directors or employees shall be resolved by binding arbitration .... ” We find that all of Johnson’s claims arise out of the acts or omissions
 
 *741
 
 that Trinity agreed to provide in the contract. Therefore, the dispute of the parties is clearly covered by the language of the arbitration provision contained in the contract.
 

 ¶ 25. We now turn to the second prong of the FAA framework.
 

 II. Whether legal constraints external to the parties’ agreement foreclosed the arbitration of those claims
 

 ¶ 26. Under this prong, we analyze those contract defenses such as fraud, duress, or unconscionability.
 
 East Ford,
 
 826 So.2d at 713(¶ 10) (citing
 
 Doctor’s Assocs.,
 
 517 U.S. at 686, 116 S.Ct. 1652). Johnson attacks certain provisions of the admission agreement as unconscionable, and since unconscionability and illegality permeate the agreement, no part of the contract should be enforced. However, the supreme court was faced with a very similar admission agreement in
 
 Covenant Health Rehab of Picayune, L.P. v. Brown,
 
 949 So.2d 732 (Miss.2007). There, the supreme court decided to continue the “precedent of striking unconscionable terms and leaving the remainder of the agreement intact.”
 
 Id.
 
 at 735(¶ 3). Here, the admission agreement contained a savings clause that stated, “In the event any provision of this Agreement is held to be unenforceable for any reason, the unenforceability thereof shall not affect the remainder of this Agreement, which shall remain in full force and effect and enforceable in accordance with its terms.” In accordance with the savings clause in the admission agreement and the precedent stated in
 
 Brown,
 
 we strike only those offending provisions of the admission agreement.
 

 ¶ 27. In her brief, Johnson alleges that fourteen provisions of the admission agreement are unconscionable or illegal. Trinity, in its reply brief, concedes that several provisions are unconscionable and should be stricken. Therefore, we strike the following provisions of the admission agreement: C5 (requiring forfeiture by the resident of all claims except those for willful acts); C8 (waiving liability for criminal acts against individuals); E7 (placing a limit on actual damages at $50,000); E8 (waiving punitive damages); E12 (requiring the resident to pay for enforcement costs of the agreement if the resident challenges the grievance resolution process or its award); E16 (requiring legal action within one year of the alleged event); and the last sentence of Section F that disallowed punitive damages and reinforced the limit on actual damages under E7.
 

 ¶ 28. In addition to the agreed sections discussed above, there are several additional provisions that we find to be unconscionable. First, we first address the provision that reserves to Trinity the right of access to the courts, while denying Johnson the very same right. Second, Section A5 provides that in collections matters, the resident would be responsible for the costs of litigation. Third, Section E5 provides that the parties must submit to a grievance resolution process for all matters, except payment of services. The supreme court has held that such provisions are unconscionable and should be stricken.
 
 Brown,
 
 949 So.2d at 739(¶ 18) (citing
 
 Pitts v. Watkins,
 
 905 So.2d 553, 555-56(¶ 10) (Miss.2005)). In fact in
 
 Brown,
 
 the supreme court found that the entire grievance resolution procedure in the admissions agreement was unconscionable and should be struck since it was “one-sided, oppressive, and unconscionable.”
 
 Id.
 
 Accordingly, we strike Sections A5, E5, and E6 of the admission agreement
 

 ¶ 29. Next, we turn to the provision that sets the costs for requested copies at three dollars per page, Section E14.
 
 *742
 
 This provision has been superceded by Mississippi Code Annotated Section 11—1— 52 (Supp.2007). It provides that a nursing home:
 

 shall charge no more than the following amounts to patients or their representatives for photocopying any patient’s records: Twenty Dollars ($20.00) for pages one (1) through twenty (20); One Dollar ($1.00) per page for the next eighty (80) pages; Fifty Cents (50<f) per page for all pages thereafter.
 

 Miss.Code Ann. Section 11-1-52 (Supp. 2007). Since the provision violates the statute, we find that it is stricken.
 

 ¶ 30. We now turn to the remainder of Johnson’s claims that the agreement should not be enforced. First, she alleges that Trinity attempted to illegally contract for services below the minimum standards required by state regulation through Section Bl. It provides:
 

 The Facility agrees to furnish general duty nursing and nurse aid care equal to at least the State Medicaid minimum hours per Resident day (this is generally approximately 2.0 to 2.8 hours per Resident day on average including administration time). Temporary periods of extreme bad weather, strikes, unusual labor problems or similar disruptions may result in temporary periods below this average.
 

 However, care should be at a minimum of 2.8 hours of direct nursing care per resident day. 12-000-045 Miss.Code R. § 201.1(a) (Weil 2007). This concern was directly addressed by Justice Diaz in his dissent in
 
 Brown. Brown,
 
 949 So.2d at 743 (¶¶ 36-38) (Diaz, J., dissenting). However, the majority did not strike the provision that Justice Diaz stated was illegal, nor did it invalidate the agreement. It is important to note that the agreement does specifically state that it will furnish care to State mínimums. Therefore, in accordance with the holding of the majority in
 
 Brown,
 
 we do not invalidate the agreement based on this provision.
 

 ¶ 31. Next, Johnson alleges that Trinity attempted to illegally contract away its duty to provide notice upon a change in the resident’s status. The agreement provides in Section B5 that the “Facility will attempt to notify the Responsible Party in the event of significant changes in the Resident’s status.” Johnson points to federal law that requires the long-term care facility to notify the legal representative, if known, of any significant changes. 42 C.F.R. § 483.10(b)(ll) (2007). While it would appear that this provision attempts to contract away a duty to contact the legal representative regarding any significant changes, we do not invalidate the agreement based on this provision. Regardless of the language of Section B5, Trinity was still required to maintain federal and state standards for notice requirements.
 

 ¶ 32. Johnson’s final allegation that the agreement should be unenforceable involves the arbitration provision itself. She states that the American Arbitration Association (AAA), the arbitration service named in the provision, announced that it would “no longer accept the administration of eases involving individual patients without a post-dispute agreement to arbitrate.” While it would appear that the AAA would not administer the arbitration of this claim since there is only a pre-dispute agreement to arbitrate, it does not mean that arbitration is precluded. Arbitration pursuant to the AAA’s rules and procedures would still be possible. In addition, the arbitration provision lays out the process to choose a capable arbitrator to hear the dispute aside from the AAA.
 

 CONCLUSION
 

 ¶ 33. We find that the admission agreement minus the stricken provisions re
 
 *743
 
 mains binding upon the parties. The stricken provisions include A5, C5, C8, E5, E6, E7, E8, E12, E16, and the last sentence of Section F. The remainder of the admission agreement, including the remaining arbitration provision is still binding upon the parties. Accordingly, the trial court erred when it denied Trinity’s motion to compel arbitration. Therefore, we reverse the judgment of the trial court and remand this case to the trial court with directions to compel the parties to submit to arbitration.
 

 ¶ 34. THE JUDGMENT OF THE HINDS COUNTY CIRCUIT COURT IS REVERSED AND REMANDED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEES.
 

 LEE AND MYERS, P.JJ., CHANDLER, GRIFFIS, BARNES, ISHEE, ROBERTS AND CARLTON, JJ„ CONCUR. IRVING, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.