# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2014-CA-00338-SCT

*NC LEASING, LLC d.b.a.*
*THE NICHOLS CENTER*

*v.*

*NILENE JUNKER*

DATE OF JUDGMENT:                  02/27/2014
TRIAL JUDGE:                       HON. JOHN HUEY EMFINGER
COURT FROM WHICH APPEALED:         MADISON COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:            JOSEPH SPENCER YOUNG, JR.
ATTORNEYS FOR APPELLEE:            JOHN F. HAWKINS
                                   RALPH TODD WILLIS, JR.
NATURE OF THE CASE:                CIVIL - PERSONAL INJURY
DISPOSITION:                       REVERSED AND REMANDED - 08/13/2015
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE RANDOLPH, P.J., PIERCE AND COLEMAN, JJ.**

**COLEMAN, JUSTICE, FOR THE COURT:**

¶1.     Nilene Junker was admitted to the Nichols Center nursing facility for rehabilitation after surgery.  Junker's daughter, acting with power of attorney, signed an admission agreement on Junker's behalf.  The admission agreement contained an arbitration clause. While she was being put in a room, Junker fell and sustained injuries.  Junker sued the Nichols Center, and the nursing home filed a motion to compel arbitration.  The circuit court denied the motion, finding that the arbitration agreement was unenforceable because the forum was unavailable.  The Nichols Center appealed.

**Factual Background and Procedural History**

¶2.     Nilene Junker underwent a total knee replacement in November 2010. Following the surgery, an ambulance transported her from St. Dominic Hospital to the Nichols Center nursing facility for rehabilitation. When the nursing home admitted Junker, her daughter signed an admission agreement on Junker's behalf.[1] When the facility placed her in a room, the bed had to be moved to make room; an attendant failed to lock the bed in place after moving it. Junker stood up and leaned on the bed, and it slid out from under her. Junker suffered injuries as a result of the fall.[2]

¶3.     The admission agreement contained an arbitration clause, which provided the following, in pertinent part:

> **ARBITRATION – <u>PLEASE READ CAREFULLY</u>**
>
> 1. It is understood and agreed by the Facility and Resident and/or Responsible Party that any legal dispute, controversy, demand or claim (hereinafter collectively referred to as "claim" or "claims") that arises out of or relates to the Admission Agreement, any service or health care provided by the Facility to the Resident or any matter related to the Resident's stay shall be resolved exclusively by binding arbitration pursuant to the Federal Arbitration Act, to be conducted at a place agreed upon by the parties, or in the absence of such agreement, at the Facility, in accordance with the procedural rules of the American Arbitration Association ("AAA") under its Commercial Arbitration Rules, and not by a lawsuit or resort to court process except to the extent applicable state or federal law provides for judicial review of arbitration proceedings or the judicial enforcement of arbitration awards. The Commercial Arbitration Rules established by the AAA ("the Rules") are referred to only to

---

[1] Neither party raised the issue of whether Junker's daughter had authority to execute the admission agreement and consent to arbitration on Junker's behalf.

[2] At the time of the fall, Junker had been admitted to the Nichols Center, and her daughter had executed the admission agreement. Junker does not dispute that the admission agreement was in effect when the incident occurred.

provide a procedural guideline for arbitrations held under this Agreement. The Parties do not agree to use the AAA to conduct or administer any arbitration under this Agreement or to confer any jurisdiction to the AAA; nor do they agree to use the AAA's arbitrators. Accordingly, the availability or willingness of the AAA to administer any arbitration is irrelevant to this Agreement. The Parties agree that no AAA Rules, policies or procedures which are inconsistent with the specific terms or intent of this Agreement, including any requirement that the Parties enter into a post-dispute agreement to arbitrate, will be applied to or followed in any arbitration held under this Agreement. The Parties may mutually agree to further deviate from said rules of the American Arbitration Association in whole or in part. Otherwise, said procedural Rules shall govern the arbitration.

2.  The parties agree that any dispute shall be arbitrated by one impartial, unbiased arbitrator who shall be chosen by mutual agreement of the parties. The arbitrator's decision shall be final and binding. The parties agree that judgment may be entered on any arbitration award in any court having jurisdiction.

. . .

7.  ***The parties understand and agree that by entering this arbitration agreement, which binds both the Facility and the Resident/Responsible Party, they are giving up and waiving their constitutional right to have any claim decided in a court of law before a judge and a jury.***

. . .

10. The parties agree the Resident and Responsible Party have other choices with regard to the provision of long term care to the Resident and they enter into this Agreement voluntarily. The parties acknowledge that this Agreement involves interstate commerce and that this Arbitration Agreement shall be governed by and interpreted under the Federal Arbitration Act, 9 U.S.C. Sections 1-16.

(Emphasis in original.)  A final notice was printed above the daughter's signature, in bold and all capital letters, which read: **"THE UNDERSIGNED ACKNOWLEDGE THAT EACH OF THEM HAS READ AND UNDERSTANDS THIS AGREEMENT, INCLUDING THE ARBITRATION PROVISION, AND HAS RECEIVED A COPY**

**OF THIS AGREEMENT, AND THAT EACH OF THEM VOLUNTARILY CONSENTS TO AND ACCEPTS ALL OF ITS TERMS."**

¶4.    In December 2012, Junker sued the Nichols Center and the ambulance service that transported her to the nursing home. The Nichols Center moved to compel arbitration. Junker responded in opposition, arguing that the arbitration agreement was unconscionable and unenforceable because it did not provide a forum for arbitration. Junker's position was based on the fact that the American Arbitration Association ("AAA") no longer accepts healthcare cases "involving individual patients without a post-dispute agreement to arbitrate." Junker argued that, because she did not agree to arbitrate, the parties would not be able to agree on an arbitrator. Thus, according to the agreement, the AAA would need to administer the arbitration and, because the AAA was no longer taking healthcare cases, Junker maintained that the forum was unavailable. The Nichols Center responded that a forum was, in fact, available because the agreement did not require the parties to use the AAA. The agreement only required the parties to use the AAA procedural rules as a guideline; the agreement specifically said that the AAA would not conduct the arbitration and that the parties did not agree to use AAA arbitrators. The Nichols Center maintained that Junker's unavailable-forum argument was without merit.

¶5.    The circuit court denied the motion to compel arbitration. The court announced a ruling from the bench without hearing arguments from the parties. The court held that the arbitration agreement was not valid and that the "arbitration agreement must fail because it

4

does not make provision for an arbitrator in the event the parties could not agree." The Nichols Center appealed the denial of its motion to compel arbitration.

## Discussion

¶6. "Notwithstanding the lack of a final judgment or a grant of a petition for interlocutory appeal, this Court has jurisdiction over an appeal from a denial of a motion to compel arbitration." *United Credit Corp. v. Hubbard*, 905 So. 2d 1176, 1177 (¶ 6) (Miss. 2004) (citing *Tupelo Auto Sales, Ltd. v. Scott*, 844 So. 2d 1167, 1169-70 (¶¶ 6-10) (Miss. 2003)). We review a trial court's denial of a motion to compel arbitration de novo. *Sawyers v. Herrin-Gear Chevrolet Co., Inc.*, 26 So. 3d 1026, 1034 (¶ 20) (Miss. 2010) (citing *East Ford, Inc. v. Taylor*, 826 So. 2d 709, 713 (Miss. 2002)). The Court has adopted the federal policy in favor of arbitration, and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Sawyers*, 26 So. 3d at 1034 (¶ 20) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)).

¶7. Junker maintains that the contract fails because there is no mutual agreement as to an arbitrator and no legally valid method to enforce the arbitration agreement. The Nichols Center argues that the trial court mistakenly believed that the dispute was over the selection of an arbitrator when the dispute actually concerned Junker's refusal to submit to arbitration. Further, the Nichols Center maintains that Section 5 of the Federal Arbitration Act governs and, in the event the parties could not agree on an arbitrator, the court could appoint one.

¶8. The circuit court judge denied the Nichols Center's motion to compel arbitration, holding that the arbitration agreement failed to provide a forum because it did "not make

5

provision for an arbitrator in the event the parties could not agree." The judge stated that the agreement could have provided for the court to appoint an arbitrator if the parties did not agree, but it did not. The court held that it would not reform the agreement to select a forum that was not anticipated by either party.[3] Because Junker refused to consider arbitration, much less agree to an arbitrator, the court concluded that it would be left to appoint an arbitrator, which it should not do absent an express provision, and the court deemed the agreement to be invalid. The trial court erred in two regards. First, the agreement *did* provide a method for arbitrator selection if the parties could not agree. Second, the issue of arbitrator selection was not properly before the court, as there is no evidence to suggest that Junker made any good faith attempt to comply with the terms of the agreement and attempt to mutually select an arbitrator.

## A. Arbitrator Selection

¶9.     Junker argues that the contract is "nothing more than an agreement to 'mutually' agree on essential terms in the future" because the agreement did not provide a method for selecting an arbitrator in the event the parties could not agree. Junker is incorrect. Section 10 of the agreement provided: "The parties acknowledge that this Agreement involves interstate commerce and that this Arbitration Agreement shall be governed by and interpreted under the Federal Arbitration Act, 9 U.S.C. Sections 1-16." Section 5 of the Federal

---

[3] The trial court relied exclusively on *Covenant Health & Rehabilitation of Picayune, LP v. Estate of Moulds*, 14 So. 3d 695, 707 (¶ 38) (Miss. 2009) (The Court has held that courts "should not become a party to redrafting or reforming agreements [and] . . . should not be used to reform a contract to select a forum not anticipated by either of the parties.").

6

Arbitration Act provides a mechanism for appointing an arbitrator if the parties cannot agree:

> If in the agreement provision be made for a method of naming or appointing an arbitrator or arbitrators or an umpire, such method shall be followed; but if no method be provided therein, or if a method be provided and any party thereto shall fail to avail himself of such method . . . then upon the application of either party to the controversy the court shall designate and appoint an arbitrator or arbitrators or umpire, as the case may require, who shall act under the said agreement with the same force and effect as if he or they had been specifically named therein; and unless otherwise provided in the agreement the arbitration shall be by a single arbitrator.

9 U.S.C.A. § 5. Under Section 5 of the FAA, the court is to appoint an arbitrator in the event the parties cannot agree. The parties' agreement specifically provided that it involved interstate commerce and was governed by the FAA.

¶10. Although this Court has not previously adopted Section 5 of the FAA, we have "endorsed the undisputed province of the Federal Arbitration Act, 9 U.S.C. §§ 1-16 (FAA), and recognized its clear authority to govern agreements formed in interstate commerce wherein a contractual provision provides for alternative dispute resolution." *Adams Cmty. Care Ctr., LLC v. Reed*, 37 So. 3d 1155, 1158 (¶ 6) (Miss. 2010). *See also Slater-Moore v. Goeldner*, 113 So. 3d 521, 525 (¶ 8) (Miss. 2013) ("The Federal Arbitration Act governs the enforcement of arbitration contracts that evidence a transaction in interstate commerce."); *IP Timberlands Operating Co. v. Denmiss Corp.*, 726 So. 2d 96, 107 (¶ 45) (Miss. 1998) ("The Arbitration Act, resting on Congress's authority under the Commerce Clause, creates a body of federal substantive law that is applicable in both state and federal courts."). We have held that nursing home admissions agreements affect interstate commerce and are governed by the FAA. *Adams Cmty. Care Ctr.*, 37 So. 3d at 1158 (¶ 6); *Grenada Living*

7

*Ctr., LLC v. Coleman*, 961 So. 2d 33, 36 (¶ 7) (Miss. 2007).

¶11.    While the court may be called upon to appoint an arbitrator if the parties cannot agree, in the instant case, the circuit court was not yet at that juncture. From the record, there is no evidence to suggest that Junker made any good faith attempt to comply with the terms of the arbitration agreement or to "mutually agree" with the Nichols Center on the selection of an arbitrator. Junker asserts only that she "does not agree to arbitrate under any circumstance." The parties were not seeking the appointment of an arbitrator in the wake of disagreement; rather, the Nichols Center sought to compel Junker to arbitrate the dispute according to the terms of the agreement as written, including the mutual selection of an arbitrator. Without any attempt by the parties to select an arbitrator, it is mere speculation to conclude that no arbitrator will ever be mutually agreeable. And, if the parties reached that point, the court would be called upon to appoint an arbitrator pursuant to Section 5 of the FAA.

### B. Motion to Compel

¶12.    When ruling on a motion to compel arbitration, a court's inquiry is two-pronged. *Rogers-Dabbs Chevrolet-Hummer, Inc. v. Blakeney*, 950 So. 2d 170, 173 (¶ 12) (Miss. 2007) (citing *East Ford*, 826 So. 2d at 713 (¶ 9)). Under the first prong, the court must determine whether the parties agreed to arbitrate. *Id.* In making that determination, two considerations should be weighed: (1) whether a valid arbitration agreement exists and (2) whether the parties' dispute falls within the scope of the arbitration agreement. *Id.* Only after satisfying the first prong and finding that the parties agreed to arbitrate does the Court move to the second prong of the analysis. The second prong then considers "whether legal

8

constraints external to the parties' agreement foreclosed arbitration of those claims." *Id.*

¶13.    In assessing the validity of arbitration agreements under the first prong of the analysis, courts apply contract law to determine whether parties entered into a valid contract. *Adams Cmty. Care*, 37 So. 3d at 1158 (¶ 7) (citing *Grenada Living Ctr.*, 961 So. 2d at 36-37 (¶ 9)). The essential elements of a contract include: "(1) two or more contracting parties, (2) consideration, (3) an agreement that is sufficiently definite, (4) parties with legal capacity to make a contract, (5) mutual assent, and (6) no legal prohibition precluding contract formation." *Id.*  Rather than engaging in an inquiry into the validity of the contract, the circuit court dismissed the arbitration agreement as invalid simply because it concluded that no arbitrator was available.  The court focused on provision E2 of the agreement, which provides that "any dispute shall be arbitrated by one impartial, unbiased arbitrator who shall be chosen by mutual agreement of the parties."  Because Junker refused to arbitrate and insisted that the parties would not be able to agree on an arbitrator, the court found that the agreement was invalid.  The court focused its ruling on arbitrator selection alone and did not address the above contractual elements under the first prong of the analysis.

¶14.    In *Covenant Health & Rehab. of Picayune, LP v. Estate of Moulds*, 14 So. 3d 695 (Miss. 2009), the Court addressed whether an arbitration agreement between a nursing home and a resident was unenforceable when the designated arbitration forum was unavailable. The arbitration agreement in that case "require[d] that the arbitration be *administered* by the AAA." *Moulds*, 14 So. 3d at 709 (¶ 44).  Because the AAA refused to arbitrate the claim, the Court found that the designated forum was unavailable. *Id.*  The Court declined to

9

rewrite the arbitration agreement to include a forum that neither party anticipated. *Id.* at 707 (¶ 38).

¶15. Junker relies on *Moulds* to assert that the agreement must be invalid because it fails to provide an available forum. But the arbitration agreement between Junker and the Nichols Center is distinguishable from the *Moulds* agreement. Unlike the agreement in *Moulds*, the arbitration agreement here does not present an issue of forum unavailability. The terms of the agreement require that the parties arbitrate "in accordance with the procedural *rules* of the AAA." (Emphasis added.) Further, the agreement emphasizes that "the [p]arties do *not* agree to use the AAA to conduct or *administer* any arbitration agreement . . . nor do they agree to use the AAA's arbitrators." (Emphasis added.) Where the *Moulds* agreement designated the AAA as arbitrator, the agreement in the instant case designated "one impartial, unbiased arbitrator who shall be chosen by mutual agreement." And, as discussed above, if the parties cannot agree, the court can appoint an arbitrator pursuant to Section 5 of the FAA.

¶16. The fact that the AAA will no longer administer healthcare-related arbitration in the absence of a post-dispute agreement has no bearing on the agreement's validity. The arbitration agreement between Junker and the Nichols Center expressly states that "the availability or willingness of the AAA to administer any arbitration is irrelevant in this Agreement." The agreement goes on to provide that "no AAA Rules, policies or procedures [that] are inconsistent with the specific terms or intent of this Agreement . . . will be applied to or followed in any arbitration held under this agreement." The parties clearly contemplated the AAA's refusal to arbitrate potential claims when the agreement was

10

drafted. Upon that consideration, the parties agreed only to arbitrate according to the AAA's procedural rules not inconsistent with other terms of the agreement. It does not appear that the *Moulds* agreement contained such express language limiting the AAA's involvement.

¶17.    Other courts in Mississippi and neighboring states have affirmed that the AAA's refusal to arbitrate a claim does not automatically preclude arbitration as a form of dispute resolution. In *Trinity Mission Health and Rehabilitation of Clinton v. Estate of Scott*, 19 So. 3d 735, 742 (Miss. Ct. App. 2008), the wrongful death beneficiary of a prior patient argued that her pre-dispute arbitration agreement with the nursing home was unenforceable after the AAA announced that it would no longer arbitrate cases without a post-dispute agreement. The Court of Appeals commented that "[w]hile it would appear that the AAA would not administer the arbitration of this claim since there is only a pre-dispute agreement to arbitrate, it does not mean that arbitration is precluded. Arbitration pursuant to the AAA's rules and procedures would still be possible." *Id.* at 742 (¶ 32). Because the arbitration provision contained a process for choosing an arbitrator aside from the AAA, the court refused to find the agreement unenforceable on that ground. *Id.* The Alabama Supreme Court has similarly resolved the issue of whether claims are arbitrable in the absence of AAA administration. *See Blue Cross Blue Shield Alabama v. Rigas*, 923 So. 2d 1077, 1092 (Ala. 2005) (enforcing an arbitration agreement that required arbitration in accordance with AAA rules, but not administration by the AAA). In the instant case, both parties signed the agreement, thereby acknowledging that potential claims would be administered by a mutually agreeable arbitrator with or without the AAA's willingness to administer arbitration.

11

Because the agreement expressly limited the AAA's involvement and provided a method for choosing another capable arbitrator, Junker's forum-unavailability argument fails.

¶18.   The Nichols Center opines that Junker must adhere to the procedures set forth in the agreement by submitting her claim to arbitration. The nursing home relies on the Court's language in *Slater-Moore v. Goeldner*, 113 So. 3d 521, 528 (Miss. 2013), which states that "[t]here is no reason this Court should not compel a party to submit a post-contract dispute to arbitration if a valid arbitration agreement so requires." In *Slater-Moore*, the Court affirmed the grant of a motion to compel arbitration of an attorney-client fee dispute. Upon finding that the two-pronged motion to compel test was satisfied, the Court rejected the client's contention that she could revoke the arbitration provision by filing her suit and response to the motion for arbitration. *Id.* at 531 (¶ 30). Instead, the Court reaffirmed its decision to "respect the right of an individual or an entity to agree in advance of a dispute to arbitration or other alternative dispute resolution" and rejected the line of cases that previously allowed contracting parties to revoke an arbitration agreement prior to award. *Id.* (quoting *IP Timberlands*, 726 So. 2d at 104).

¶19.   Following the Court's proclamation in *Slater-Moore*, if the arbitration agreement between Junker and the Nichols Center is valid and enforceable under the two-pronged test, neither party can escape that agreement by later changing positions and filing suit. Though Junker does not allege revocation in her brief, her outright refusal to comply with arbitration "under any circumstance" gives rise to the same effect. Relying on her refusal to arbitrate as the primary justification for finding the agreement to be invalid, the circuit court

effectively allowed Junker to revoke her responsibilities under the contract by changing her mind and taking the claim to court, a result that was explicitly rejected in ***Slater-Moore***. If the arbitration agreement is valid and enforceable under the two-pronged test, parties to the agreement should be required to adhere to the arbitration procedures agreed upon. Here, the parties agreed to an arbitrator chosen by mutual agreement. If the arbitration agreement is valid, Junker should be required to nominate possible arbitrators, consider arbitrators nominated by the Nichols Center, or make other attempts to comply with the prescribed procedure.

**Conclusion**

¶20. The circuit court erred by denying the motion to compel arbitration on the basis of forum unavailability. The motion to compel asked the court to determine whether the arbitration agreement was valid and enforceable. The court was not asked to rewrite the terms of the agreement to provide for an arbitrator, but rather to compel Junker to comply with the procedures outlined in the agreement. There must be some attempt by the parties to select an arbitrator; then, if the parties cannot agree, the court may be called on to appoint an arbitrator. We reverse the decision of the circuit court, and the case is remanded for a hearing on the motion to compel and a determination of the validity of the arbitration agreement. If the arbitration agreement is valid, Junker cannot simply refuse to arbitrate.

¶21. **REVERSED AND REMANDED.**

**WALLER, C.J., RANDOLPH, P.J., LAMAR, KITCHENS, CHANDLER, PIERCE AND KING, JJ., CONCUR. DICKINSON, P.J., NOT PARTICIPATING.**

13