# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### November 13, 2019 Session

## DORA NESBITT JONES ET AL. v. ALLENBROOKE NURSING AND REHABILITATION CENTER LLC

### Appeal from the Circuit Court for Shelby County
### No. CT-003415-17   Robert Samual Weiss, Judge

_____

### No. W2019-00448-COA-R3-CV

_____

This appeal involves an arbitration agreement executed in connection with a nursing home admission.  At the time of admission, Appellee, daughter of the resident, signed the admission contract and separate voluntary arbitration agreement on behalf of her mother. Appellee later sued the nursing home, on behalf of her mother, for injuries sustained in a fall, and the nursing home sought to enforce the arbitration agreement signed by Appellee.  The trial court denied Appellant's motion to compel arbitration, finding that Appellee lacked authority, under the power of attorney, to bind her mother to the agreement.  Discerning no error, we affirm.

### Tenn. P. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded

KENNY ARMSTRONG, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and ROBERT E. LEE DAVIES, SR. J., joined.

William Davis Frye, Brent E. Siler, Kathryn K. Van Namen, S. Keenan Carter, Ormonde B. Landry, and Craig C. Conley, Memphis, Tennessee, for the appellant, Allenbrooke Nursing and Rehabilitation Center, LLC.

Deena K. Arnold, Carey L. Acerra, and Cameron C. Jehl, Memphis, Tennessee, for the appellee, Dora Nesbitt Jones.

### OPINION

### I. Background

Dora Nesbitt Jones ("Appellee") is the daughter of Mary Nesbitt.  On February 20, 2007, Ms. Nesbitt executed a general power of attorney ("POA") in favor of Ms. Jones.

In relevant part, the POA granted Ms. Jones "broad powers to handle [Ms. Nesbitt's] property," and specified that those powers extended to: (1) real estate transactions; (2) tangible personal property transactions; (3) bond, share and commodity transactions; (4) banking transactions; (5) business operating transactions; (6) insurance transactions; (7) gifts to charities; (8) claims and litigation; (9) personal relationships and affairs; (10) benefits; (11) records, reports and statements, (12) access to safe deposit boxes; and (13) "[a]ll other matters." The power of attorney specifically excluded power over medical or healthcare decisions, to-wit: "This document does not authorize anyone to make medical or other health care decisions for you."

The parties agree that by June of 2013, Ms. Nesbitt was suffering from dementia and was incompetent. On June 26, 2013, following hospitalization for a hip fracture, Ms. Nesbitt was admitted to Allenbrooke Nursing and Rehabilitation Center, LLC ("Allenbrooke" or "Appellant"). As part of Ms. Nesbitt's admission to Allenbrooke, Appellee signed an admission contract and a separate "Resident and Facility Arbitration Agreement" (the "Agreement"). In relevant part, the Agreement, which is at issue in this appeal, provides:

> Agreement to Submit Disputes to Binding Arbitration. Any and all disputes between the Resident and the Facility shall be submitted to binding arbitration where the amount in controversy exceeds $25,000. This includes any disputes arising out of or in any way relating to this Agreement (its enforceability), the Admission Agreement, or any of the Resident's stays at the Facility, whether existing or arising in the future, whether for statutory, compensatory or punitive damages, and irrespective of the legal theories upon which the claim is asserted. In the event that a trial court does not enforce this Agreement, the parties agree to stay all proceedings in the lower court until the merits of any appeal are determined by the appellate court. The Arbitrator shall apply the law of the state where the Facility is located except that the parties expressly stipulate that the Federal Arbitration Act, 9 U.S.C. §§ 1-16 shall exclusively govern the enforcement of this Agreement. If any provision of this Agreement is held to be unenforceable by reason of law, the provision will be modified to reflect the parties' intention to arbitrate their claims, and all remaining provisions shall remain in full force and effect. If a court determines that the signators to this Agreement are not bound to arbitrate their claims, the parties agree that any dispute shall be resolved solely by a judge in a bench trial.

On or about September 2016, while a resident at Allenbrooke, Ms. Nesbitt suffered a fall, which resulted in a fractured tibia and fibula. Ms. Nesbitt was hospitalized, and she did not return to Allenbrooke thereafter.

On August 16, 2017, Appellee, as Ms. Nesbitt's next friend, filed suit against Allenbrooke for ordinary negligence and violations of the Tennessee Healthcare Liability Act, Tennessee Code Annotated §§ 29-26-101, *et seq*., for injuries allegedly sustained by Ms. Nesbitt in the September 2016 fall. On November 10, 2017, Allenbrooke filed a motion to compel arbitration and to stay proceedings, seeking to enforce the June 26, 2013 Agreement. On January 29, 2019, the trial court conducted a hearing on Appellant's motion to compel arbitration. By order of February 8, 2019, the trial court denied Allenbrooke's motion, finding that Ms. Jones did not have authority, under the POA, to bind Ms. Nesbitt to the Agreement. Allenbrooke appeals.

## II. Issues

Allenbrooke raises three issues for review, which we restate slightly as follows:

1. Whether the trial court erred in deciding the issue of Ms. Jones' authority when the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, requires the issue of enforceability to be referred to the arbitrator.
2. Whether the trial court erred in finding that Ms. Jones had neither actual nor apparent authority to bind Ms. Nesbitt to the arbitration agreement.
3. Whether the arbitration agreement should be enforced against Ms. Nesbitt as a third-party beneficiary.

## III. Standard of Review

We review a trial court's denial of a motion to compel arbitration under the same standards as a bench trial. *Mitchell v. Kindred Healthcare Operating, Inc.*, 349 S.W.3d 492, 496 (Tenn. Ct. App. 2008) (citing *Spann v. Am. Express Travel Related Servs. Co.*, 224 S.W.3d 698, 706-707 (Tenn. Ct. App. 2006)). Accordingly, we review the trial court's conclusions of law *de novo* without a presumption of correctness. *Id*. We review the trial court's findings of fact *de novo* with a presumption of correctness unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d).

## IV. Analysis

### A. Applicability of the FAA

Citing the language in the Agreement that, "the parties expressly stipulate that the Federal Arbitration Act, 9 U.S.C. §§ 1-16 shall exclusively govern the enforcement of this Agreement," Allenbrooke first argues that the FAA governs questions regarding the enforceability of the arbitration agreement, and the trial court erred in failing to apply the FAA in this case.. In the recent case of *Edwards v. Allenbrooke Nursing & Rehabilitation Center, LLC*, No. W2016-02553-COA-R3-CV, 2017 WL 4861658 (Tenn. Ct. App. Oct. 26, 2017), this Court rejected the precise argument raised by Allenbrooke in this appeal. The arbitration agreement at issue in *Edwards* contained a delegation

- 3 -

provision identical to that used in the Agreement here.[1] ***Edwards***, 2017 WL 4861658, at *3 ("The arbitration agreement in this case provided that the arbitrator would apply Tennessee law 'except that the parties expressly stipulate that the Federal Arbitration Act, 9 U.S.C. §§ 1–16 shall exclusively govern the enforcement of this Agreement.'"). As in the instant case, in ***Edwards***, appellant/nursing home cited the delegation provision in support of its argument that the trial court lacked authority to decide whether an individual had authority to sign an arbitration agreement on behalf of a nursing home patient. ***Id***. at *1-2. Here, the gravamen is whether the arbitration agreement was properly formed, i.e., whether Ms. Jones had authority to bind Ms. Nesbitt to the Agreement. In ***Edwards***, we explained that "[t]he trial court must resolve 'any issue questioning the formation of the parties' arbitration agreement.'" ***Id.*** at *4 (quoting ***Clayton v. Davidson Contractors, LLC***, No. E2013-02296-COA-R3-CV, 2015 WL 1880973, at *6 (Tenn. Ct. App. Apr. 24, 2015)). One such "formation" issue to be decided by the court is "the signor's lack of authority to bind the principal." ***Id.***

> In sum, "when a party claims it never concluded an agreement at all, it is for the court, not the arbitrator, to determine whether the parties agreed to the arbitration provision upon which the party seeking arbitration relies." [***Clayton v. Davidson Contractors, LLC***, No. E2013-02296-COA-R3-CV, 2015 WL 1880973, at *7 (Tenn. Ct. App. Apr. 24, 2015)] (citing ***Granite Rock*** [***Co. v. International Brotherhood of Teamsters***, 561 U.S. 287, 299-300 (2010)]. As a practical matter, the ***Clayton*** court observed that requiring a trial court to resolve a claim that a contract was never formed was "sound policy." ***Id***. at *8. Compelling a party to arbitrate whether he actually agreed to arbitrate would be "'hopelessly circular.'" ***Id.*** (quoting ***Bruni v. Didion***, 73 Cal. Rptr. 3d 395, 408 (Cal. Ct. App. 2008)). It would also lead to a "bootstrapping" problem with the arbitrator determining his own authority to decide the dispute. ***Id.***

***Edwards***, 2017 WL 4861658, at *4.

### B. Ms. Jones' Authority to Bind Ms. Nesbitt to the Agreement

This case requires us to determine whether Appellee was authorized to bind Ms. Nesbitt to arbitration. At the time of her admission to Allenbrooke, it is undisputed that Ms. Nesbitt was incompetent. It is also undisputed that no health surrogacy form was executed on Ms. Nesbitt's behalf. Furthermore, there is no dispute that Ms. Nesbitt did not execute a separate healthcare power of attorney in favor of Ms. Jones.

---

[1] The ***Edwards*** Court explained that, "[i]n the context of an arbitration agreement, an agreement to arbitrate threshold issues concerning the arbitration agreement is known as a delegation provision." ***Edwards***, 2017 WL 4861658, at *3 (citations omitted).

- 4 -

## 1. Authority under the Power of Attorney

"A power of attorney is a written instrument that creates a principal-agent relationship." *Mitchell*, 349 S.W.3d at 496. "The instrument itself indicates the purpose of the agency and the extent of the agent's powers." *Id*. "[T]he language of a power of attorney determines the extent of the power that the power of attorney conveys, and the language should be construed using the same rules of construction generally applicable to contracts and other written instruments." *Cabany v. Mayfield Rehabilitation and Special Care Center*, No. M2006-00594-COA-R3-CV, 2007 WL 3445550, at *4 (Tenn. Ct. App. Nov. 15, 2007) (citing *Tenn. Farmers Life Reassurance Co. v. Rose et al.*, 239 S.W.3d 743 (Tenn. 2007)). "[P]owers of attorney should be interpreted according to their plain terms." *Tenn. Farmers Life Reassurance Co*., 239 S.W.3d at 750. "However, when the meaning of a power of attorney is unclear or ambiguous, the intention of the principal, at the time of the execution of the power of attorney, should be given effect." *Id.*

Turning to the POA executed by Ms. Nesbitt, the opening paragraph states that, "The purpose of this power of attorney is to give the person whom you designate (Your "Agent") broad powers to handle your property." Despite the use of "broad powers," as noted above, the POA goes on to enumerate that the power granted thereunder is limited to certain enumerated areas, i.e., real estate transactions, banking transactions, and claims and litigation. In the first instance, it is a well-known rule of construction that where general and specific clauses conflict, the specific clause governs the meaning of the contract. 11 Williston on Contracts § 32:10 (4th ed.); *City of Knoxville v. Brown*, 260 S.W.2d 264, 268 (Tenn. 1953) ("The doctrine of *Ejusdem Generis* based on the maxim *expressio unius est exclusio alterius* is that, where general words are used, followed by a designation of particular things or subject to be included or excluded as the case may be, the inclusion or exclusion will be presumed to be restricted to the particular thing or subject") (quoting Ballentine's Law Dictionary, 2nd ed.); *Magevney v. Karsch*, 65 S.W.2d 562, 571 (Tenn. 1933) ("There is no rule better established with reference to the construction of written instruments than that the exception of particular things from general words shows that the things excepted would have been within the general language, had the exceptions not been made."). Under the foregoing rule of construction, we must read the POA narrowly to grant Ms. Jones' power over Ms. Nesbitt's affairs only as to those specifically enumerated areas. That being said, Allenbrooke contends that the POA grant of power to Ms. Jones over Ms. Nesbitt's "claims and litigation," and "[a]ll other matters" inured her with the authority to bind Ms. Nesbitt to arbitration. The flaw in Allenbrooke's argument is that the execution of admission documents at a health care facility is a healthcare decision. In *Owens v. National Health Corp.*, 263 S.W.3d 876, 884 (Tenn. 2007), the Tennessee Supreme Court held that

> Tennessee Code Annotated section 34-6-201(2) (2001) defines "[h]ealth care" to mean "any care, treatment, service or procedure to maintain,

> diagnose or treat an individual's physical or mental condition, and includes medical care as defined in § 32-11-103(5)." Section 34-6-201 then defines "[h]ealth care decision" to mean "consent, refusal of consent or withdrawal of consent to health care." Tenn. Code Ann. § 34-6-201(3) (2001). Under these two statutory definitions, the decision to admit King to the nursing home clearly constitutes a "health care decision."

*Owens*, 263 S.W.3d at 884; *accord* **Barbee v. Kindred Healthcare Operating, Inc.**, *et al.*, No. W2007-00517-COA-R3-CV, 2008 WL 4615858, at *11 (Tenn. Ct. App. Oct. 20, 2008) ("Execution of the documents admitting the Decedent to the Ripley skilled-care facility, including execution of the accompanying arbitration agreement, is clearly a 'health care decision. . . .'"); **Bockelman v. GGNSC Gallatin Brandywood LLC**, No. M2014-02371-COA-R3-CV, 2015 WL 5564885, at *6 (Tenn. Ct. App. Sept. 18, 2015), *perm. app. denied* (Tenn. Jan. 20, 2016) ("Admitting Ms. Wilson to a nursing home was a health care decision."); **Necessary v. Life Care Ctrs. Of Am. Inc**., No. E2006-00453-COA-R3-CV, 2007 WL 3446636, at *5 (Tenn. Ct. App. Nov. 16, 2007).

Furthermore, the arbitration agreement here explicitly states that the parties "agree that the signing of this Agreement, both by itself and in conjunction with the corresponding admission and receipt of services, **is a healthcare decision**." (Emphasis added). "[P]arties are free to structure an arbitration agreement as they see fit." **Pyburn v. Bill Heard Chevrolet**, 63 S.W.3d 351, 359 (Tenn. Ct. App. 2001). "The cardinal rule for interpretation of contracts is to ascertain the intention of the parties and to give effect to that intention, consistent with legal principles." **Bob Pearsall Motors, Inc. v. Regal Chrysler-Plymouth, Inc.**, 521 S.W.2d 578, 580 (Tenn. 1975). "In interpreting contractual language, courts look to the plain meaning of the words in the document to ascertain the parties' intent." **Allstate Ins. Co. v. Watson**, 195 S.W.3d 609, 611 (Tenn. 2006). The plain terms of the Agreement here clearly show that the parties intended the execution of the Agreement to constitute a healthcare decision. Accordingly, under the foregoing law and pursuant to the parties' own Agreement, it is clear that the signing of the Agreement was a healthcare decision. Therefore, in order to bind Ms. Nesbitt to that Agreement, Ms. Jones would have to have authority to make healthcare decisions for Ms. Nesbitt. Here, the POA specifically excludes healthcare decisions, "This Document does not authorize anyone to make medical or other health care decisions for you." This language is unambiguous—Ms. Jones did not have her mother's POA over healthcare decisions. Because the execution of the Agreement was a healthcare decision, we conclude that Ms. Jones did not have the authority to bind Ms. Nesbitt to the Agreement. **Sanders by and through Minter v. Harbor View Nursing and Rehabilitation Center, Inc.**, No. W2014-01407-COA-R3-CV, 2015 WL 3430082, at *4 (Tenn. Ct. App. May 29, 2015) ("Because the decision to execute the arbitration agreement is a healthcare decision as defined in the parties agreement, and . . . because the Appellee did not have the authority to make healthcare decisions for the Decedent, we conclude that the Appellee did not have the authority to bind the Decedent to arbitration.").

- 6 -

## 2. Apparent Authority

In the absence of actual authority under the power of attorney, Allenbrooke argues that Ms. Jones had apparent authority to bind Ms. Nesbitt to the Agreement. In **Barbee v. Kindred Healthcare Operating,** this Court explained the concept of apparent authority as follows:

> In general, apparent authority is the power held by the putative agent "to affect a principal's legal relations with third parties when a third party reasonably believes the [putative agent] has authority to act on behalf of the principal and that belief is traceable to the principal's manifestations." In Tennessee, apparent authority has been described as:
>
> (1) such authority as the principal knowingly permits the agent to assume or which he holds the agent out as possessing;
> (2) such authority as he appears to have by reason of the actual authority which he has;
> (3) such authority as a reasonably prudent man, using diligence and discretion, in view of the principal's conduct, would naturally suppose the agent to possess.
>
> We note that "a principal is responsible for the acts of an agent within his apparent authority only where the principal himself by his acts or conduct has clothed the agent with the appearance of authority, and not where the agent's own conduct has created the apparent authority." The burden is on the claimant to show the authority of the agent.

*Barbee*, 2008 WL 4615858, at *6-*7 (citations omitted).

In **Barbee**, the decedent had not executed any written document, such as a power of attorney, authorizing Barbee to act on her behalf. *Barbee*, 2008 WL 4615858, at *3. Furthermore, Barbee had never received authorization, from any court, in a conservatorship or a guardianship proceeding. *Id*. Nonetheless, the Kindred defendants argued that Barbee had apparent authority to act as the decedent's agent, noting that he was her only child and had handled many of her financial and business obligations, including facilitating decedent's hospital admission just prior to her residency at Kindred's nursing facility. *Id*. Kindred also argued that there were "exigent circumstances," such as the decedent's inability to handle her own affairs, that gave Barbee the apparent authority to execute the nursing home admission documents, including the arbitration agreement, on her behalf. *Id*. The trial court agreed, finding that Barbee had apparent authority to bind decedent to the arbitration agreement. In

reversing the trial court, we specifically rejected the argument that an incapacitated person may confer apparent authority in cases such as the one at bar, to-wit:

> [I]t is clear that agency status, via either actual authority or apparent authority, stems from the actions of the principal. Apparent authority may be found "only where the principal himself by his acts or conduct has clothed the agent with the appearance of authority." Regardless of the actions the Decedent may have permitted Barbee to take on her behalf in the past, at the time she was admitted to [Kindred], she no longer possessed "her mental faculties. . . ." If the Decedent could no longer "act on her own behalf," how could she have "clothed [Barbee] with the appearance of authority" to act on her behalf?

*Barbee*, 2008 WL 4615858, at \*9 (citations omitted); *accord* ***Ricketts v. Christian Care Ctr. of Cheatham County, Inc.***, No. M2007-02036-COA-R9-CV, 2008 WL 3833660, at \*2 (Tenn. Ct. App. Aug. 15, 2008) (finding that a nursing home resident, who was not competent when readmitted did not have the ability to give her daughter authority to sign arbitration agreement). The same is true here. As noted above, the parties do not dispute the fact that Ms. Nesbitt was incompetent at the time of her admission to Allenbrooke. As such, she could not have "clothed [Ms. Jones] with the appearance of authority" to make healthcare decisions on her behalf.

### C. Third Party Beneficiary

Finally, Allenbrooke asserts that the Agreement is binding because Ms. Nesbitt was a third-party beneficiary thereof. This Court has previously rejected this exact argument in ***Ricketts v. Christian Care Center of Cheatham County, Inc.***, No. M2007-02036-COA-R9-CV, 2008 WL 3833660, \*4 (Tenn. Ct. App. Aug. 15, 2008), wherein we stated:

> We are aware of caselaw from other jurisdictions in which a nursing home contract signed by a family member on behalf of the resident or as a "responsible party" has been characterized as a contract between the family member and the nursing home, with the resident being a third party beneficiary of the contract. *See* ***J.P. Morgan Chase & Co. v. Conegie ex rel. Lee***, 492 F.3d 596 (5th Cir.2007) (mother found to have authority to sign as surrogate for daughter, but third party beneficiary theory cited as alternative theory to bind daughter); ***Alterra Healthcare Corp. v. Estate of Linton ex rel. Graham***, 953 So.2d 574 (Fla. Dist. App.Ct.2007) (finding resident to be third party beneficiary of residency agreement); ***Trinity Mission Health & Rehab. of Clinton v. Estate of Johnson***, No.2006-CA-01053-COA, 2008 WL 73682, \*3 (Miss. Ct. App. Jan.8, 2008) (finding mother to be third party beneficiary of contract between nursing home and

daughter); ***Trinity Mission of Clinton, LLC v. Barber***, No.2005-CA-02199-COA, 2007 WL 2421720, *6 (Miss. Ct. App. Aug.28, 2007), *cert. granted*, 977 So.2d 1144 (Miss. Mar.13, 2008) (finding no authority for son to bind his mother to admission agreement, but finding mother to be third party beneficiary of contract between son and nursing home).

We do not find these authorities persuasive here. Third party beneficiary concepts should not be used to circumvent the threshold requirement that there be a valid arbitration agreement. Ms. Ricketts signed the admission agreement as Ms. Williamson's "representative." She was not entering into a contract on her own behalf, but as her mother's representative. The issue in this case is whether Ms. Ricketts had authority to act as her mother's agent and to enter into a contract on her behalf. If she did not have authority, there is no valid contract.

The same reasoning is applicable here. Having determined that Ms. Jones had no authority to bind Ms. Nesbitt to the Agreement, there is no valid contract, under which Ms. Nesbitt could be a third-party beneficiary.

## V. Conclusion

For the foregoing reasons, we affirm the judgment of the trial court. The case is remanded for such further proceedings as may be necessary and are consistent with this opinion. Costs of this appeal are assessed against the Appellant, Allenbrooke Nursing and Rehabilitation Center, LLC, for all of which execution may issue if necessary.

_____
KENNY ARMSTRONG, JUDGE