# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2016-CA-00749-COA

**GLORY RIGSBY**                                                                 **APPELLANT**

**v.**

**AMERICAN CREDIT COUNSELORS, INC.**                              **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 05/10/2016 |
| TRIAL JUDGE: | HON. ROGER T. CLARK |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT, FIRST JUDICIAL DISTRICT |
| ATTORNEY FOR APPELLANT: | JASON GRAEBER |
| ATTORNEY FOR APPELLEE: | REGINALD PAUL HARRION |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| TRIAL COURT DISPOSITION: | GRANTED APPELLEE'S MOTION TO DISMISS |
| DISPOSITION: | REVERSED AND REMANDED - 04/04/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**WILSON, J., FOR THE COURT:**

¶1.    Glory Rigsby, an elderly Gulfport resident on Social Security disability, alleges that she is the victim of a "debt relief scheme" perpetrated by American Credit Counselors Inc. ("ACCI"), a Florida corporation with its principal place of business in Boca Raton, Florida. Rigsby filed a complaint against ACCI in county court, alleging that she had paid ACCI more than $1,000 and received nothing in return. ACCI moved to dismiss the complaint based on a forum selection clause contained in its "Program Guidelines," which Rigsby had received and signed. The county court granted ACCI's motion to dismiss, and the circuit court affirmed. For the reasons discussed below, we hold that ACCI's forum selection clause is

unenforceable.  Therefore, we reverse and remand the case to the county court.

## FACTS AND PROCEDURAL HISTORY

¶2.     On August 23, 2013, Rigsby entered into an "Agreement" with Henry Portner P.C. ("Portner P.C."), a New Jersey professional corporation with its offices in Coconut Creek, Florida.  Henry Portner ("Portner") is a Florida attorney who is not licensed to practice in Mississippi.  He is the president and "managing attorney" of Portner P.C.  The Agreement refers to Rigsby as the "Client" and to Portner P.C. as the "Law Firm" or the "Attorney." The Agreement provides in part:

> **1. Retention of Services.** Subject to the terms and conditions set forth herein, Client hereby requests that Attorney provide information, recommendations, and an action plan regarding Client's current debt obligations, with the express understanding that Attorney does not hold himself out for representation on any issues involving the interpretation and/or application of any specific state law.  At all times, Law Office shall employ counsel licensed in Mississippi, to facilitate the achievement of client objectives.  In addition, Client understands that Attorney may use associate attorneys, legal assistants and other third parties (supervised by Attorney at all times) to assist in rendering services under this Agreement.  If Attorney identifies an FDCPA violation for which client desires representation, Attorney shall provide said representation at no out of pocket cost to Client.  In the event of a settlement, Attorney shall be entitled to forty percent (40%) of the remaining settlement, along with reimbursement for any costs advanced by Attorney.

> **2. Attorney Fees.** Client shall pay Law Office Seventy Five Dollars ($75.00) upon [C]lient's receipt and implementation of Attorney's analysis and recommended action plan.  Attorney shall provide a specific action plan consistent with [C]lient's goals.  Client shall also pay a monthly retainer fee equal to Twenty Nine Dollars ($29.00) per month for so long as this Agreement remains in effect.  Said fee is to keep Law Office on retainer and include ongoing representation and supervision of any recommended action plan.  Ongoing monthly retainer is optional and [C]lient may discontinue representation at any time. . . .

> **3. Attorney-Client Relationship.** Henry Portner, P.C. is a Florida based law

2

office and is not associated with any governmental agency. Other than as specifically provided herein, Attorney is not providing any other services to the Client. Particularly, this Agreement does not include any legal representation before any tribunal, including federal or state courts of any jurisdiction or representation in front of any governmental agency. Trial, or other state, federal, or governmental issues shall require Client to execute a separate Retainer Agreement. On such issues, Attorney may, but is not obligated to, refer Client to another attorney considered "Of Counsel" who is licensed in Mississippi or to independent counsel of Client's choosing in his/her state. It is clearly understood and agreed between the parties hereto that Attorney shall not pay any of Client's creditors nor assume any debts on behalf of Client.

. . . .

5. **Arbitration Agreement/Jurisdiction.** Law Office and Client hereby agree to settle any and all claims, disputes or controversies arising out of or relating to the employment of Attorney herein by final and binding arbitration before a neutral Arbitrator, pursuant to the rules of the American Arbitration Association. Any determination by the Arbitrator shall be final and binding. To the extent it may be necessary, the final and binding decision of the Arbitrator may be filed with a court of competent jurisdiction. The parties agree that any arbitration brought with respect to this Agreement shall be brought exclusively in The State of Florida, County of Palm Beach, and the parties irrevocably submit to the jurisdiction of Palm Beach County, Florida.

Rigsby signed the Agreement and was given a one-page "Outline of the Proposed Action Plan." The plan called for Rigsby to pay $116 per month for forty-eight months to pay off about $4,000 in unsecured debt to creditors such as Wal-Mart, Old Navy, and Chevron.

¶3. On or about September 10, 2013, Rigsby signed a document provided by ACCI entitled "Program Guidelines" that provides in part:

REASON FOR THIS PROGRAM: The Client(s) have certain ongoing financial obligations to certain creditors and desire ACCI to assist in obtaining an effective Debt Management Program ("Program"). ACCI will provide certain payment plans, work-ups, negotiations, counseling and other services.

1. **SERVICES OFFERED:** By joining this Program, you authorize ACCI and its authorized agents, to discuss your financial information and negotiate with

3

any of your listed creditors. You will deliver the monthly payments under the Debt Management Program to ACCI by[] automatic withdrawal (ACH), money-order, electronic fund transfer or other forms of payment acceptable to ACCI. ACCI shall forward your monthly payments as disclosed under the Program to your creditors. Your monthly payment has been established in the amount of $116 per month consisting of 7 creditor(s) based upon the information furnished by you . . . . Payments shall begin on 10/06/13 and be payable on the 6th day of each and every month thereafter until the Program is full satisfied.

**2. REPRESENTATIONS BY YOU:** . . . ACCI shall not be responsible for any garnishments, judgments, liens, repossessions, lapse/cancellation in insurance coverage, or any other direct or indirect or consequential damages of whatever nature.

. . . .

**8. HOLD HARMLESS:** You agree to indemnify and hold ACCI, its agents, officers, directors, employees, contractors or managers harmless from any and all claims for liability, damage, attorney fees, and costs arising either directly or indirectly from ACCI's management of the Program or this Program, including but not limited to, any damage that may arise from the negligent acts of ACCI; any actions taken by your creditors, including, but not limited to, suits, judgments, orders, attachments, liens, garnishments, levies or repossessions; attorney fees, costs, or relating to any claim or action by any third party which arises either directly or indirectly from ACCI's management of the Program or this Program.

**10. INTERPRETATION:** The parties acknowledge that for all purposes, this program was made, negotiated and concluded in Palm Beach County, Florida, regardless of where it was actually signed and/or executed. These program guidelines shall be governed by and interpreted in accordance with the laws of the state of Florida, without regard to Choice or Conflict of Laws. In the even [sic] of any litigation associated with this Program Guidelines, jurisdiction and venue shall be solely and properly had in Palm Beach County, Florida, without regard to Choice and Conflict of Laws, irrespective of the place of residence, domicile, or business address of you, the Client(s) herein.

The debts and payment plan attached to the Program Guidelines mirror the Outline of the

Proposed Action Plan provided by Portner P.C. Thus, although Portner P.C. is not mentioned

4

in the ACCI documents or vice versa, the purpose of ACCI's "Program" appears to be to implement Portner P.C.'s "Action Plan."

¶4. On October 20, 2014, Rigsby filed suit against ACCI, Portner P.C., and Portner in the County Court of Harrison County. According to the complaint, Rigsby is an "elderly woman" and a "vulnerable consumer" on Social Security who "needs every dollar to make ends meet." The complaint alleges that "Rigsby paid the defendants over $1,000 and received nothing in return." It is further alleged that the defendants are running a "debt relief scheme" whereby ACCI essentially "pays a fee to lease attorney letterhead in order to avoid" regulatory oversight. The complaint alleges various other misdeeds by the defendants and then asserts claims for fraud, breach of fiduciary duty, unjust enrichment, and violations of the Mississippi Debt Management Services Act, Miss. Code Ann. §§ 81-22-1 to -31 (Rev. 2015), and demands a trial by jury.

¶5. On December 17, 2014, the defendants filed a joint answer to the complaint. ACCI and Portner P.C. also filed a joint motion to dismiss in which they argued, inter alia, that the case should be dismissed based on the "jurisdiction" provisions of their agreements with Rigsby, and because Rigsby failed to plead fraud with particularity. Portner filed a separate motion to dismiss arguing that the claims against him should be dismissed because Rigsby failed to plead facts that would justify piercing the corporate veil.

¶6. Rigsby filed responses to both motions to dismiss. She argued that the forum selection clause in ACCI's "Program Guidelines" was "permissive" and did not require her to bring the action in Florida—or, alternatively, that it was invalid and unenforceable if

5

interpreted as "mandatory." She argued that the "jurisdiction" provision in her Agreement with Portner P.C. was actually an arbitration clause, which was inapplicable since Portner P.C. was not seeking to arbitrate her claim. Alternatively, she argued that the provision was also invalid and unenforceable if it was interpreted as a mandatory forum selection clause. Finally, she argued that she had pled fraud with sufficient particularity, and had pled sufficient facts to support her claims against Portner.

¶7. A hearing was held in the county court on January 28, 2015. Rigsby testified at the hearing without objection. She testified that she does not work, that she receives Social Security disability payments, and that her husband is blind. She testified that it would be difficult or inconvenient for her to travel to Florida to litigate the case because she is "crippled" and depends on her grandson to drive her places.

¶8. The county court subsequently entered an order that (1) dismissed Rigsby's fraud claim for failure to plead with sufficient particularity; (2) granted ACCI's motion to dismiss based on the forum selection clause of its Program Guidelines; (3) denied Portner P.C.'s motion to dismiss based on the "jurisdiction" provision of its contract; and (4) denied Portner's motion to dismiss. The county court certified its dismissal of ACCI and Rigsby's fraud claims as a final judgment pursuant to Mississippi Rule of Civil Procedure 54(b).

¶9. Rigsby filed a timely notice of appeal. She later settled her claims against Portner P.C. and Portner, and in the circuit court her briefs addressed only the interpretation and enforceability of ACCI's forum selection clause. On May 11, 2016, the circuit court entered an order affirming the county court. Rigsby again filed a timely notice of appeal.

6

**DISCUSSION**

¶10. "[I]ssues pertaining to the interpretation and enforcement of a forum selection clause [are] questions of law and subject to de novo review." *Titan Indem. Co. v. Hood*, 895 So. 2d 138, 145 (¶30) (Miss. 2004). A court faced with a motion to dismiss based on a forum selection clause should first examine the language of the clause "to determine whether the clause is mandatory or permissive." *Id.* at 145-46 (¶31). A clause is "mandatory" if it purports to require litigation in the specified forum only and to prohibit litigation in any other forum. *Id.* at 146 (¶31). A clause is "permissive" if it merely permits litigation in the specified forum and does not prohibit litigation in another forum. *Id.* If a clause is permissive, then it does not require dismissal of a lawsuit filed in another forum. *Id.*

¶11. The applicable forum selection clause in this case provides:

> In the even [sic] of any litigation associated with this Program Guidelines, jurisdiction and venue shall be solely and properly had in Palm Beach County, Florida, without regard to Choice and Conflict of Laws, irrespective of the place of residence, domicile, or business address of you, the Client(s) herein.

Rigsby argues that the clause is permissive because it is contained in "Program Guidelines," and "guidelines" are inherently permissive and merely provide guidance without mandating action. She also argues that the Program Guidelines as a whole are vague and inconsistent and that a typo in the relevant clause ("even") renders it unclear.

¶12. We disagree. The clause clearly states that "jurisdiction and venue shall be *solely* and properly in Palm Beach County, Florida" (emphasis added). This is sufficient to make it a mandatory clause. *See id.* And although the document is entitled "Program Guidelines," it clearly is a binding contract. It provides, among other things, that the "Program" is entered

7

into "by and between [ACCI] and . . . Rigsby" and that the "Program Guidelines shall become binding on the parties upon its execution."

¶13.    We next consider whether the forum selection clause is enforceable.  Our Supreme Court has held:

> Forum selection clauses are "*presumptively valid and enforceable*" *unless* the resisting party can show:
>
> (1) Its incorporation into the contract was the result of fraud, undue influence or overweening bargaining power;
>
> (2) The selected forum is so gravely difficult and inconvenient that the resisting party will for all practical purposes be deprived of its day in court; or
>
> (3) The enforcement of the clause would contravene a strong public policy of the forum in which the suit is brought, declared by statute or judicial decision.

*Long Beach Auto Auction Inc. v. United Sec. All. Inc.*, 936 So. 2d 351, 355 (¶13) (Miss. 2006) (quoting *Titan Indem.*, 895 So. 2d at 146 (¶34)).

¶14.    Rigsby challenges the forum selection clause in this case on all three grounds.  She alleges fraud, but as discussed above, her fraud claim was dismissed, and she has abandoned her appeal on that issue.  More important, a forum selection clause is invalid on this ground only if "*[i]ts incorporation into the contract was the result of fraud*."  *Id.* (emphasis added). Thus, "[f]raud and overreaching must be specific to a forum selection clause in order to invalidate it." *Haynsworth v. The Corp.*, 121 F.3d 956, 963 (5th Cir. 1997).  Rigsby alleges no fraud specific to the forum selection clause.[1]

---

[1] The dissent more broadly asserts that "no evidence of overreaching . . . exists in this case."  However, the complaint specifically alleges violations of the Mississippi Debt Management Services Act and accuses ACCI of "preying on desperate Mississippians" by charging "unfair, deceptive, and illegal fees."  These are only allegations at this point, since

¶15.    Rigsby also argues that the forum selection clause contravenes Mississippi public policy because the Mississippi Debt Management Services Act provides that a consumer who is harmed by a violation of the Act may bring a civil action to recover actual damages, attorneys' fees, and costs.  *See* Miss. Code Ann. § 81-22-23(2)(d) (Rev. 2015).  However, nothing in the Act establishes a public policy prohibiting an agreement to resolve such claims in another state.  Accordingly, this argument is also without merit.

¶16.    We do, however, find merit in Rigsby's claim that "[t]he selected forum is so gravely difficult and inconvenient that [she would] for all practical purposes be deprived of [her] day in court."  *Titan Indem.*, 895 So. 2d at 146 (¶34).  In *Titan Indemnity*, the Supreme Court stated that "mere reference to the expense the litigant may incur to litigate the matter in another forum does not meet [the litigant's] burden of proof" that the forum selection clause is unenforceable.  *Id.* at 147 (¶43).  However, *Titan Indemnity* involved vastly different facts and is readily distinguishable.  *Titan Indemnity* was a dispute among commercial entities in the insurance industry that involved claims for millions of dollars in compensatory and punitive damages.  *See generally id.* at 140-44 (¶¶1-24).  The forum selection clause was part of a negotiated contract that was "at the center of the controversy."  *See id.* at 141, 147 (¶¶6, 41).  The Court repeatedly emphasized that all parties were "sophisticated" businesses and businessmen.  *See, e.g., id.* at 146-47, 151 (¶¶35, 41, 43, 63).  On those facts, the Court found

on a motion to dismiss there is no real "evidence" either way.  Our point in the text is only that there is no allegation of fraud *specific to the forum selection clause*.  In addition, although the dissent asserts that "[t]he forum selection clause in this case was not hidden in the contract language," that is debatable.  It is the last sentence of section 10 of 14 on page 3 of 3 of ACCI's Program Guidelines, under the heading "INTERPRETATION."

"that requiring [the] case to be litigated in Bexar County, Texas, would not be so gravely difficult and inconvenient that [the plaintiffs] would, for all practical purposes, be deprived of their day in court." *Id.* at 151 (¶62).

¶17. The facts of *Titan Indemnity* are readily distinguishable, and its reasoning does not apply in this case. Indeed, in *Titan Indemnity*, the Supreme Court specifically stated that the "burden of proving" that a forum selection clause would deprive a litigant of her day in court is "*much more difficult for sophisticated businesses than for individual consumers*." *Id.* at 147 (¶43) (emphasis added). Rigsby has met her much lower burden. The very purpose of the form "Program Guidelines" in which the forum selection clause is contained is to assist the "Client" in managing and reducing debt that she has been unable to manage herself. The Guidelines state, "Our main goal is to help you get out of debt!!!" *By definition*, a Client is someone who has *already* incurred debt that she has been unable to repay. ACCI gave Rigsby a "Client Action Plan," purportedly prepared specifically for her, with "strategy suggestions" to save money, such as "buy[ing] less meat" at the grocery store, shopping at garage sales, and "[r]estrict[ing] use [of her car] to essential driving only."[2] Rigsby alleges that she ultimately paid ACCI approximately $1,000 but received nothing in return. It is not realistic to expect Rigsby or any other Mississippi "Client" to incur the expense and devote the time necessary to travel hundreds of miles to litigate such a claim in Palm Beach County, Florida. If the forum selection clause is enforced she "will for all practical purposes be deprived of [her] day in court." *Titan Indem.*, 895 So. 2d at 146 (¶34).

---

[2] ACCI encouraged Rigsby to use public transportation, walk, or ride a bike instead.

10

¶18. Relying on cases from the District of Columbia, the dissent argues that ACCI's forum selection clause should be enforced because it does not "shock the judicial conscience." *Post* at (¶24) (quoting *Goodrich v. Adtrav Travel Management Inc.*, No. 15-CV-00899 (CRC), 2016 WL 4074082, at *3 (D.D.C. Feb. 1, 2016)).[3] However, Mississippi law does not saddle Rigsby with the burden of shocking judicial consciences. Again, under Mississippi law, she need only show that it would be "so gravely difficult and inconvenient" for her to pursue her case in South Florida that enforcing the clause would "for all practical purposes . . . deprive[] [her] of [her] day in court." *Titan Indem.*, 895 So. 2d at 146 (¶34). While the dissent repeatedly asserts that "Rigsby failed to meet her burden," the dissent never explains how it is practical or realistic to expect a Client such as Rigsby—an individual seeking assistance precisely because she has been unable to "manage" her existing debts—to travel to Boca Raton to pursue a relatively low-value consumer dispute. We conclude that our Supreme Court had in mind cases such as this when it held a forum selection clause will not be enforced if its practical effect is to deprive a litigant of her day in court. Accordingly, we hold that the county court erred by enforcing the clause.

**CONCLUSION**

¶19. The forum selection clause in the ACCI Program Guidelines is unenforceable.

---

[3] The two Mississippi cases cited in paragraph 24 of the dissenting opinion have nothing to do with the enforceability of a forum selection clause, much less one requiring litigation in a distant forum. Those decisions simply decline to adopt the doctrine of "intrastate forum non conveniens" and hold that "mere inconvenience" is not a basis for transferring a case *from one county in Mississippi to another county in Mississippi*. *See generally Salts v. Gulf Nat'l Life Ins.*, 743 So. 2d 371 (Miss. 1999); *Pisharodi v. Golden Triangle Reg'l Med. Ctr.*, 735 So. 2d 353 (Miss. 1999).

11

Therefore, we reverse the judgment of the circuit court and remand the case to the county court for further proceedings consistent with this opinion.

¶20. **THE JUDGMENT OF THE CIRCUIT COURT OF HARRISON COUNTY, FIRST JUDICIAL DISTRICT, IS REVERSED, AND THIS CASE IS REMANDED TO THE COUNTY COURT OF HARRISON COUNTY, FIRST JUDICIAL DISTRICT, FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, FAIR, GREENLEE AND WESTBROOKS, JJ., CONCUR. CARLTON, J., DISSENTS WITH SEPARATE WRITTEN OPINION.**

**CARLTON, J., DISSENTING:**

¶21. I respectfully dissent from the majority opinion. A review of the agreement and precedent reflects that the forum-selection clause in this case is mandatory in its language and that it is valid and enforceable. We must also acknowledge that, "[u]nder Mississippi law, a contracting party is under a legal obligation to read a contract before signing it and will be charged with knowing the contract's contents." *Slater-Moore v. Goeldner*, 113 So. 3d 521, 529 (¶25) (Miss. 2013) (internal quotation marks omitted). In this case, Rigsby bore the burden to show that the forum-selection clause was unenforceable, and she failed to meet her burden. As explained briefly below, I would therefore affirm the circuit court's, as well as the county court's, dismissal of Rigsby's claims.

¶22. As stated, a review of the record reflects that Rigsby failed to meet her burden to resist the enforcement of the forum-selection clause in this case. We must acknowledge that forum-selection clauses are "presumptively valid and enforceable." *Id.* at 527 (¶15).[4] The

---

[4] *See also Tel-Com Mgmt. Inc. v. Waveland Resort Inns Inc.*, 782 So. 2d 149, 151-52 (¶7) (Miss. 2001); *Barnett v. DynCorp Int'l L.L.C.*, 831 F.3d 296, 304 (5th Cir. 2016);

12

party resisting the forum-selection clause must bear the burden of proof to show that the enforcement is unreasonable. *Id.* In *Titan Indemnity Co. v. Hood*, 895 So. 2d 138, 146 (¶34) (Miss. 2004), the Mississippi Supreme Court recognized that the United States Supreme Court set forth the factors a resisting party must show to prove that a forum-selection clause is invalid and unenforceable:

1. Its incorporation into the contract was the result of fraud, undue influence[,] or overweening bargaining power;

2. The selected forum is so gravely difficult and inconvenient that the resisting party will[,] for all practical purposes[,] be deprived of its day in court; or

3. The enforcement of the clause would contravene a strong public policy of the forum in which the suit is brought, declared by statute or judicial decision.

*Id.* (citing *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 12-13 (1972)).[5]

¶23. The forum-selection clause in this case was not hidden in the contract language. There is no evidence that the contract was a result of coercion, undue influence, fraud, overreaching, or any one-on-one solicitation. We find that no evidence of overreaching or fraud exists in this case. The record reflects that Rigsby began searching for solutions to address her high-interest debt. In the process, Rigsby discovered ACCI, and she contacted them. ACCI responded to Rigsby by mailing her an informational letter that included a

*Weber v. PACT XPP Techs., AG*, 811 F.3d 758, 773 (5th Cir. 2016) ("The presumption of enforceability may be overcome, however, by a clear showing that the clause is 'unreasonable' under the circumstances.").

[5] Our supreme court explained that, "[a]lthough Zapata is an admiralty case, its standard has been widely applied to forum[-]selection clauses generally." *Titan Indem. Co.*, 895 So. 2d at 146 (¶34).

retainer agreement and a check-draft-authorization form.

¶24.    A reference to the mere inconvenience of a forum fails to provide sufficient evidence to overcome the presumptive validity and enforceability of a forum-selection clause. *See Salts v. Gulf Nat'l Life Ins.*, 743 So. 2d 371, 375 (¶14) (Miss. 1999); *Pisharodi v. Golden Triangle Reg'l Med. Ctr.*, 735 So. 2d 353, 355 (¶10) (Miss. 1999); *see also Goodrich v. Adtrav Travel Mgmt. Inc.*, No. 15-CV-00899 (CRC), 2016 WL 4074082, at *3 (D.D.C. Feb. 1, 2016) ("[E]ven if traveling to Alabama would impose a 'substantial financial burden' on [the] plaintiff, that result—though unfortunate—would not be 'so outrageously unfair as to shock the judicial conscience.'"); *Song fi Inc. v. Google Inc.*, 72 F. Supp. 3d 53, 63-64 (D.D.C. 2014) (holding a forum-selection clause was valid and that travel to California from all over the world to litigate disputes was not substantively unconscionable so as to preclude enforcement of the forum-selection clause; such a clause was necessary to manage litigation expenses).    In her response to ACCI's motion to dismiss, Rigsby presented claims of inconvenience regarding the selected forum of South Florida.  Rigsby argued that "the selected forum is so gravely difficult and inconvenient that the resisting party will[,] for all practical purposes[,] be deprived of its day in court."  In support of her claim, Rigsby asserted that she "testified at the hearing on January 28, 2015[,] that she receives social security, her husband is blind[,] and she could not afford to travel to Florida to resolve this matter.  Rigsby paid the Defendants over $1,000.00.  They did nothing for her."  However, the county court found that this assertion failed to meet the burden of proof set forth in *Titan Indemnity Co.*, 895 So. 2d at 146 (¶34), and granted ACCI's motion to dismiss, which the

14

circuit court affirmed.  Furthermore, as stated, Rigsby also presented no evidence of overreaching or fraud.  Based on the foregoing, Rigsby failed to meet her burden of showing that the forum-selection clause was unenforceable.  I would therefore affirm the circuit court's dismissal of Rigsby's claims.